54  284
55  656
54  284
56  335
56  672
56  762
54  284
60  216
60  822
54  284
64  91
54  284
065 380
065 384
65  478
54  284
69  133
54  284
80  192
80  544

THE ATCHISON TOPEKA & SANTA FÉ RAILROAD COMPANY v. W. J. HAGUE.

1. ACCIDENT AT RAILROAD CROSSING — *Personal Injuries — Action — Evidence.* In an action against a railroad company to recover for injuries resulting from a collision with a team and wagon at the crossing of a highway, where it is claimed that those in charge of the train failed to give the required statutory signals on approaching the crossing, the admission of testimony that such signals were not given on the same train at another crossing a mile and a half further along, and which was reached within two minutes after passing the crossing where the collision occurred, is not error.

2. ORDINARY CARE — *Giving Signals — Company's Duty.* In some cases, ordinary care requires that those in charge of a train shall give other warnings and take further precautions to avoid injury upon approaching a crossing than those required by statute. The giving of the statutory signals is not always the full measure of the railroad company's duty to those who may be upon or passing over the crossing.

3. DANGEROUS SPEED — *Improper Instruction.* Cases may arise where the speed of a train which causes an injury may be considered by the jury in connection with the location and surrounding circumstances upon a question of negligence; but, where there is no proof that the speed at which the train in question was run was dangerous, the giving of an instruction as to the liability of a company for running its train at a dangerous rate of speed is improper.

4. INSTRUCTION, *Not Prejudicial Error.* An instruction that a party approaching a crossing has a right to assume that in handling the cars the railroad company would act with proper care, and that reasonable and necessary signals of approach would be given by those in charge of the train, is not prejudicial error, where the court, in the same connection, instructs that such traveler is required to make vigilant use of his senses so far as there is opportunity, to ascertain if there is present danger in crossing.

5. EVIDENCE — *Negligence — Erroneous Instruction.* Where no testimony is offered showing recklessness or wantonness of those in charge of a train, an instruction that if the jury find the negligence of the company was so gross as to amount to wantonness or a reckless disregard of the plaintiff's safety, that he would be entitled to recover, although he was guilty of ordinary negligence, is error.

6. LOOKING AND LISTENING — *Contributory Negligence.* Ordinarily, it is not the duty of a traveler on approaching a railroad track to stop; but there are cases where, by reason of obstructions or noises in the

vicinity, he would be required, not only to look and listen, but to stop and listen, before crossing the track. Whether the surroundings of the crossing and the existing circumstances and conditions are such as to require him to stop, is ordinarily a matter for the determination of the jury. Under the testimony in the present case, it cannot be said, as a matter of law, that the failure to stop was negligence *per se.*

### *Error from Johnson District Court.*

ACTION by *Hague* against the *Railroad Company* to recover damages for bodily injuries. Judgment for plaintiff for $300. The defendant comes to this court. The opinion herein, filed November 10, 1894, states the material facts.

*A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

1. The court erred in permitting testimony to the effect that on the special train no whistle was sounded at another crossing than the one at which the injury occurred.

It was wholly immaterial in this case whether any whistle was sounded at this second crossing or not. The accident did not occur there. The negligence of the defendant is alleged to be its failure to whistle for the crossing at which the accident occurred. It was wholly immaterial, therefore, whether the whistle was sounded for any other crossing. The engineer may have been negligent in failing to whistle at some other crossing; still, that would be immaterial. Such fact would not show that he had failed to whistle at the crossing in question. See *A. T. & S. F. Rld. Co. v. Townsend,* 39 Kas. 116.

2. The court erred in giving and refusing certain instructions.

Any less rate of speed than that used would not have prevented the accident. One witness for the plaintiff testified that he guessed the rate of speed was 50 miles an hour. This was not even excessive. In many countries in Europe trains are operated at the rate of 90 miles an hour. Limited trains in the east make an average of 60 miles an hour. In any event, so far as the rural districts are concerned, railroad com-

panies must have a discretion in determining the speed at which their trains are to be operated, and a jury cannot fix the maximum rate. *Childs v. Penn. Rld. Co.*, 24 Atl. Rep. 341; *McKonkey v. C. B. & Q. Rld. Co.*, 40 Iowa, 205, 206; *Goodwin v. C. R. I. & P. Rly. Co.*, 11 Am. & Eng. Rld. Cas. 460; *Railroad Co. v. Ritchie*, 102 Pa. St. 425; *Powell v. Mo. Pac. Rly. Co.*, 76 Mo. 80; *Warner v. Railroad Co.*, 44 N. Y. 465, 470; *Telfer v. Railroad Co.*, 30 N. J. Law, 188, 192; *Flatters v. Railroad Co.*, 35 Iowa, 191.

It was wrong for the court to suggest to the jury that they might find, under the evidence, any wantonness. The instruction was misleading. See *K. P. Rly. Co. v. Peavey*, 29 Kas. 180.

The court erred in refusing to give the sixth instruction requested by the defendant.

See, also, *Bohan v. M. L. & S. W. Rld. Co.*, 61 Wis. 391, same case, 19 Am. & Eng. Rld. Cas. 276; *Calhoun v. N. C. & H. Rld. Co.*, 66 N. Y. 133; *Seibert v. Erie Rly. Co.*, 49 Barb. 584; *Haynes v. St. L. K. C. & N. Rld. Co.*, 71 Mo. 638; *Ellis v. G. W. Rld. Co.*, L. R. 9 C. P. 551; *Tulley v. F. Rld. Co.*, 134 Mass. 499; same case, 14 Am. & Eng. Rld. Cas. 682; *C. B. & Q. Rld. Co. v. Damarel*, 81 Ill. 452.

The accident did not happen in a city or village, but at a country highway crossing. The duty of the railroad company in the premises has been fixed by the legislature. Gen. Stat. 1889, ¶ 1213.

See, also, *N. Y. L. E. & W. Rly. Co. v. Leaman*, 23 Atl. Rep. 691; *C. B. & Q. Rld. Co. v. Dougherty*, 110 Ill. 521; *C. & A. Rld. Co. v. Robinson*, 106 id. 106; *Beisiegel v. N. Y. C. Rld. Co.*, 40 N. Y. 9; *Grippen v. N. Y. C. Res. Co.*, 40 id. 34, 39, 40; *Heaney v. Railroad Co.*, 112 id. 122; *Dyson v. N. Y. & N. E. Rld. Co.*, 17 Atl. Rep. 137; *Haas v. Railroad Co.*, 47 Mich. 406; *Railroad Co. v. Lee*, 68 Ill. 576; *Railroad Co. v. Harwood*, 80 id. 88; *Groves v. Railroad Co.*, 67 Me. 100.

The rumble of plaintiff's wagon would drown the sound, and it is a singular fact that, while the plaintiff claims he did not hear the rumbling of this train, one of his witnesses,

who was quite a distance from the railroad track, sitting at the post office in the city of De Soto, heard the rumbling of this train, and therefore his attention was directed to it. In a case like this, therefore, the court must say that it was the duty of the plaintiff to stop, so that he might listen more attentively, and make a better and more vigilant use of his sense of hearing and of sight. This is the rule generally adopted by the courts.

*Mynning v. D. L. & N. Rld. Co.*, 31 N. W. Rep. 147; *Seefeld v. C. M. & St. P. Rly. Co.*, 35 id. 278; *Shufelt v. F. & P. M. Rld. Co.*, 55 id. 1013; *Gunn v. W. & M. Rly. Co.*, 35 id. 281; *Penn. Rld. Co. v. Beall*, 73 Pa. St. 504; *Bellefontaine &c. Rld. Co. v. Hunter*, 33 Ind. 355; *Railroad Co. v. Ritchie*, 102 Pa. St. 425; *B. & O. Rld. Co. v. Hobbs*, 19 Am. &. Eng. Rld. Cas. 337, 340; *Wakelin v. L. & S. W. Rld. Co.*, 29 id. 434; *K. P. Rly. Co. v. Brady*, 17 Kas. 384, 385; Beach, Contr. Neg., 2d ed., § 39.

3. The verdict is not sustained by sufficient evidence. The motion for a new trial should have been granted, because the evidence is not sufficient to sustain the verdict. Conceding that there was evidence tending to show that there was a failure to give signals, and that upon the question of the defendant's negligence there was sufficient to go to the jury, the evidence still clearly shows that the plaintiff was guilty of contributory negligence.

*J. W. Parker*, and *S. T. Seaton*, for defendant in error:

1. In support of the first assignment of error, counsel cite *A. T. & S. F. Rld. Co. v. Townsend*, 39 Kas. 116, but upon examination of that case we are unable to see that it has any application to this case. This case falls squarely within *Bower v. C. M. & St. P. Rly. Co.*, 21 N. W. Rep. (Wis.) 536. In that case the court below overruled an objection to evidence that a bell was not rung or a whistle blown at a crossing three miles distance from the crossing at which the accident occurred. The supreme court of Wisconsin held

that the evidence was admissible. So, when the rate of speed of a train at the place of accident is in question, evidence of the speed of the same train some distance away is relevant. *Savannah &c. Rld. Co. v. Flanagan,* 9 S. E. Rep. (Ga.) 471.

2. Counsel for plaintiff in error complain of "error in the instructions." We shall first notice the complaint which they make that the court below erred in refusing to give an instruction asked for by them touching the weight of positive and negative evidence. And first, we think it a just criticism of this instruction that it is argumentative in form, and was therefore properly refused. Secondly, as presented, it ignored all modifying circumstances, and, notably, the circumstances of relative opportunity and credibility; and for this reason there was no error in refusing the instruction. *K. C. Ft. S. & G. Rld. Co. v. Lane,* 33 Kas. 702. Thirdly, the instruction, apart from the objections just mentioned, does not state the law correctly. See *Smith v. Railroad Co.,* 19 Mo. App. 120.

3. The court gave certain instructions at the request of the plaintiff below, and refused certain other instructions requested by the defendant below.

As we understand the rule, an instruction is to be considered as a whole, and not in fragments (*K. C. Ft. S. & G. Rld. Co. v. Kelley,* 36 Kas. 655, 660), and when this is done there is an explicit statement that the company was only bound to exercise ordinary care.

We cannot believe that the legislature, in enacting this statute requiring a whistle to be sounded at least 80 rods from a highway crossing, ever intended to fix upon that as the maximum of duty of railroads at such crossings. Nay, it is more rational, and more in accord with the dictates of justice, humanity, and good sense, to construe the statute as fixing the minimum obligation of railroads in this respect. We submit that, under the circumstances of this case, it was properly left to the jury to say what care and precautions, if any, besides blowing the whistle should have been taken. See *Indianapolis &c. Rld. Co. v. Stables,* 62 Ill. 313, 317. The following cases also hold that mere compliance with the statute does not

relieve the company from liability, if otherwise negligent: *Linfield v. Old Colony Rld. Co.*, 10 Cush. 562; *Bradley v. B. & M. Rld. Co.*, 2 id. 539; Elliott, Roads & H., 606; *Shaber v. St. P. M. & M. Rld. Co.*, 9 N.W. Rep. 575, 577; *Richardson v. N. Y. C. Rld. Co.*, 45 N.Y. 846; *Webb v. Portland &c Rld. Co.*, 57 Me. 134; *Railroad Co. v. Thompson*, 62 Ala. 494.

It is doubtless true that no rate of speed is negligence *per se*, but it is equally true that the speed at which a train is run over a crossing may be so great as to be negligent as a matter of fact. See *Mo. Pac. Rly. Co. v. Johnson*, 44 Kas. 664; *Indianapolis &c. Rld. Co. v. Stables*, 62 Ill. 313; *Frick v. St. L. &c. Rld. Co.*, 75 Mo. 595; *Marcott v. Marquette &c. Rld. Co.*, 47 Mich. 1; 4 Am. & Eng. Encyc. of Law, p. 931.

4. The jury was told in the fifth instruction that the " plaintiff had a right to presume that in handling their trains the railroad company would act with appropriate care and that all reasonable and necessary signals would be given," and that if the proper signals and precautions were omitted, that fact was to be considered in determining whether or not the plaintiff did exercise the requisite degree of care. But the jury was also told explicitly that such negligence on the part of the company would not excuse the plaintiff from exercising due care to avoid injury, and that he was bound, notwithstanding, to make use of his senses to ascertain if there was present danger in crossing. Other instructions given by the court fully stated plaintiff's obligation to look and listen, etc., as he approached the crossing. This instruction is fully justified by the authorities.

See *Donohue v. Railroad Co.*, 91 Mo. 357; same case, 28 Am. & Eng. Rld. Cas. 623; *Petty v. Railroad Co.*, 88 Mo. 306; *Hart v. Devereux*, 41 Ohio St. 565; *Chicago &c. Rld. Co. v. Hedges*, 105 Ind. 398; Shearm. & R. Neg. (4th ed.), §§ 92, 482, and cases cited; Beach., Contr. Neg., p. 196.

5. A mere failure to whistle for a crossing is not necessarily gross negligence, but it may be. See *L. L. & G. Rld. Co. v. Rice*, 10 Kas. 426; *Indianapolis &c. Rld. Co. v. Stables*, 62 Ill. 313; *St. L. V. & T. H. Rld. Co. v. Faitz*, 23 Ill.

19—54 KAS.

App. 498; *Cook v. Mo. Pac. Rly. Co.*, 19 Mo. App. 329; 4 Am. & Eng. Encyc. of Law, p. 932; *Nashville &c. Rld. Co. v. Nowlin*, 1 Lea (Tenn.) 523; *Frick v. Railroad Co.*, 75 Mo. 895; *Donohoe v. Railroad Co.*, 91 id. 357.

6. It does not appear in this case that Hague could have heard the rumble of the train had he both stopped and listened; and if he could not, his omission to stop cannot be deemed to have contributed to his injury. *Bower v. Chicago &c. Rld. Co.*, 21 N. W. Rep. 536. But assuming that Hague could have heard the rumbling noise of the train, it does not follow that he was guilty of contributory negligence. See *Petty v. Railroad Co.*, 88 Mo. 306.

It must be certain that the failure to stop prevented his hearing the rumble of the train; otherwise it was a question for the jury. *Salters v. Utica &c. Rld. Co.*, 59 N. Y. 631.

Under the facts in this case, it was a question for the jury to say whether plaintiff below was guilty of contributory negligence. *K. P. Rly. Co. v. Richardson*, 25 Kas. 391; *A. T. & S. F. Rld. Co. v. Morgan*, 43 id. 1; *Petty v. Railroad Co.*, 88 Mo. 306; *Kelly v. St. P. M. & M. Rld. Co.*, 29 Minn. 1; *Davis v. N. Y. &c. Rld. Co.*, 47 N. Y. 400; *Kellogg v. N. Y. C. Rld. Co.*, 79 id. 72; *Eilart v. Railroad Co.*, 48 Wis. 606; *Gugenheimer v. L. S. Rld. Co.*, 33 N. W. Rep. 165; *Mynning v. Railroad Co.*, 31 id. 147; *Seefeld v. Railroad Co.*, 35 id. 278.

The opinion of the court was delivered by

JOHNSTON, J.: W. J. Hague brought this action against the Atchison, Topeka & Santa Fé Railroad Company to recover damages for injury to his person and property by reason of an accident occurring at a railroad crossing. The crossing is over a country road, about half a mile west of De Soto. The railroad lies between the river and a bluff, and the road or highway runs along the top of the bluff, parallel with the railroad, for a considerable distance, and when about half a mile away from the village it turns north, and crosses the railroad track, toward the river. From the top of the

bluff there is quite a steep descent, through a cut, until a point about 75 feet from the track is reached, when it becomes level with the track. On the day of the accident the plaintiff and another man were driving a team of mules, attached to an ordinary wagon, along this highway, and as they entered the cut, going down the decline, the mules were pushed into a trot, or were going faster than an ordinary walk, until they reached the track. Although the wagon made considerable noise, Hague did not stop to listen, but he claims to have looked and listened, and that he did not hear or see anything that indicated the approach of a train. As he was about to cross the track, an extra train passed by, which struck and killed one of the mules, broke the harness and wagon, and also injured him. In his petition, Hague alleged that the accident resulted from the negligence of the railroad company in failing to sound the whistle 80 rods from the public road, or give any other signal of approach, and that the company ran this extra passenger train over the crossing at a speed of 50 miles an hour, in wanton disregard of those who might be upon the crossing. The case was tried with a jury, and a verdict was rendered in favor of Hague for $300. The principal controversy upon the facts was as to whether the company had given the necessary signals on approaching this crossing, and also as to whether Hague had used his senses and exercised that degree of care to avoid injury which the condition of the crossing and the circumstances required.

The first assignment of error is based upon rulings of the court permitting two witnesses to testify that, as the same train approached a crossing which was a mile and a half west of the one at which the accident occurred, no signal was given of its approach. While the writer doubts the admissibility of testimony showing negligence at other

1. Accident at railroad crossing — personal injuries — action — evidence.

crossings than where the accident occurred, the majority of the court are of opinion that its admission was not erroneous. It is held that, as the crossings were so close together, and as the crossing west of

the one at which the accident occurred was passed over by the same train in charge of the same engineer and fireman within a period of two minutes, the failure to give signals at the second crossing is some testimony of negligence at the first. The same view was taken by the supreme court of Wisconsin, where testimony was admitted of a failure to give signals on approaching a crossing three miles away from the one at which an accident occurred.   It was said that such evidence

"had a direct bearing upon that question, and had some weight, and might properly have had, against the testimony of the defendant's witnesses that the bell was rung and whistle blown at the crossing in question, and supporting the plaintiff's witnesses that they were not.   It related to the manner in which *this* locomotive was managed and run on this very trip, and near the place of the accident, in using such signals at street or road crossings, and would establish more than a *possibility* — from which a *probability* could be inferred — that no such signals were used at the Lyons crossing, and would create a strong and direct probability that they were not, because it was not customary to use such signals at other like crossings." (*Bower v. Railway Co.*, 61 Wis. 457. See, also, *Railroad Co. v. Flanagan*, 9 S. E. Rep. [Ga.] 471.)

Several errors are assigned on the giving and refusal of instructions.   The court refused to charge the jury that the railroad company owed any other duty or obligation to the public on approaching a highway or country road than those prescribed by the legislature, and that if it had performed its statutory duty of sounding the whistle at a distance of at least 80 rods from the crossing as it approached thereto, no other signal or precaution was required.   We are unable to adopt the theory that the performance of the statutory requirements is the full measure of the company's duty toward the public at crossings. Circumstances may arise where the giving of other warnings or signals may be necessary and obligatory upon the company.   If those in charge of a train should discover a person upon a crossing who had not heard the signal, and was unconscious of the approach of the train, or should see a loaded vehicle stuck fast upon the track, the giving of the statutory

2. Ordinary care —giving signals—company's duty.

signal 80 rods away would not be the entire measure of the company's duty. It would be reasonable and right to require them in such instance to give additional warnings, and in some instances to slacken the speed of the train, so as to avoid injury to persons or property that might be upon the crossing. (1 Rorer, Railways, 529, and cases cited.)

The trial court instructed the jury that, even if the whistle was sounded, as required by law, yet if they "believe that other precautions, such as ringing the bell, blowing the whistle oftener and nearer the crossing, moderating the speed of the train, etc., one or more of them, was reasonably required at the time and crossing in question to secure the safety of persons who might be at the crossing, and if you find that such precautions were not taken, the defendant would still be guilty of negligence." A just criticism is made upon this instruction, on account of the uncertainty of its language with respect to what other precautions may be required of the company. It not only names the ringing of the bell and blowing of the whistle oftener and nearer the crossing, moderating the speed of the train, but it uses the term "etc.," thus leaving the jury to infer that other precautions than those named might be required by the jury. Under this indefinite charge, the jury, or some of them, may have based their finding of negligence upon a failure to place a flagman or a gate at the crossing of this country road, or upon some vague, shifting or supposed duty or obligation.

Complaint is made of the charge of the court with reference to the speed of the train. The jury were instructed that if the train which caused the injury was running at a rate of speed in excess of that which a due regard for the public safety demanded, or at a rate which was excessive or dangerous in that locality, it would constitute negligence on the part of the company. Cases may arise where the speed of a train may be considered by a jury, in connection with the location and other surrounding circumstances, upon a question of negligence. In densely populated districts, such as towns and cities, public safety requires the speed to be moderated. This

crossing, as we have seen, however, was in the country, where there was no statutory or municipal regulation with respect to the speed of trains. In such cases there is no limit upon the speed at which trains may be run, except that of a careful regard for the safety of trains and passengers.

"The movement of trains must be regulated by the railroad companies in the exercise of a business discretion, and upon consideration of the competition they have to encounter and the necessities of modern business. We do not think a jury may fix the maximum rate of speed at which a train may be moved in the open country, or that a high rate of speed is negligence *per se*. But, while railroad companies may move their trains at such rate of speed as the character of their machinery and roadbed may make practicable, they must not forget that increased speed for the train means increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty." (*Childs v. Railroad Co.*, 24 Atl. Rep. [Pa.] 341.)

In this case, we find nothing in the testimony to require the submission of the question of speed to the jury. While witnesses differed somewhat as to the speed of the train, none of them placed it at a higher rate than 50 miles an hour; and while it is stated by one witness that the rate was faster than some other trains were run, there is no proof that it was excessive or dangerous. In the absence of such testimony, the submission of the question of speed to the jury was improper, and may have been prejudicial.

3. Dangerous speed—improper instruction.

Complaint is made of an instruction which stated that Hague had a right to assume that in handling the cars the railroad company would act with proper care, and that all reasonable and necessary signals of approach would be given by those in charge of the train. This instruction, without qualification, might have been erroneous, but the court coupled with it the statement that, though he might make that assumption, he was required to make vigilant use of his senses, so far as there was an opportunity, to ascertain if there was a present danger in crossing; and, if he neither saw nor heard

4. Instruction, not prejudicial error.

any indications of a moving train, he is not to be charged with negligence in assuming that there was none near enough to make the crossing dangerous. With this qualification, it cannot be held that the instruction was improper. (4 Am. & Eng. Encyc. of Law, 924.)

Complaint is also made that the court failed to give an instruction with reference to the relative value of positive and negative testimony. It is true, as contended, that positive evidence that the statutory signals were given in general outweighs negative evidence that they were not heard by other witnesses.

"The testimony of one who was in a position to hear, and who was giving special attention to the sounding of the whistle, that it was not sounded, while negative in form, is a positive statement of fact; and where the witnesses had equal opportunity to hear the whistle, and are equally credible, it is generally of as much value as the testimony of one who states that it was sounded." (*Railroad Co. v. Lane*, 33 Kas. 702.)

From the testimony in the present case, an instruction with reference to the difference between positive and negative evidence might have been properly given, but the one which was submitted was somewhat objectionable in form, and we cannot say that its refusal was error.

There is good cause for complaint of a charge of the court as to gross negligence. The jury were told that, if the negligence was so gross as to amount to wantonness or a reckless disregard of the plaintiff's safety, the plaintiff would be entitled to recover, although he was guilty of ordinary negligence. There is nothing in the testimony which warranted the giving of this instruction. It is clear, and conceded that the engineer or fireman in charge of the train did not know that anyone was at the crossing, and was not aware of the peril of the plaintiff. The speed cannot be held to be excessive or dangerous, and a mere oversight or omission to give the statutory signals, if such was the case, does not furnish any evidence of such recklessness and wantonness as would relieve Hague from the exercise of ordinary diligence. Both the engineer and the fireman testify positively that the whistle

sounded for that crossing, and that the bell was rung, but upon this question there is a dispute. However, 5. Evidence— negligence— erroneous instruction. there is nothing in the testimony to show that they were not at their proper places in the cab, keeping a lookout upon the track for obstructions, and certainly nothing to show malice or such wanton negligence as would justify the instruction that was given.

The final contention — that the verdict is not sustained by sufficient evidence — requires but little attention. It is true that the case is close, upon the facts, both as to whether the company performed its duty by giving proper warning at the crossing, and as to whether plaintiff below was guilty of contributory negligence. It is earnestly contended that it was the duty of Hague in approaching the railroad track not only to look and listen for the train, but to stop before he reached the railroad track. In the wagon which he was driving down the hill were barrels, and as the mules were in a sort of a trot and the wagon with the barrels made a rumbling noise, it is contended that it was his duty to stop the wagon so that he could hear an approaching train. Ordinarily, it is not the duty of a traveler on approaching a railroad track to stop, but there may be cases where, by reason 6. Looking and listening — contributory negligence. of obstructions or noises in the vicinity, that he would be required to stop and listen before crossing the track. Whether the surroundings of this crossing and the circumstances and conditions which existed at the time of the accident required Hague to stop, was a proper matter for the consideration of the jury. Under the testimony in the case, it cannot be said, as a matter of law, that the failure to stop was negligence *per se;* and, hence, it cannot arbitrarily be said that plaintiff is not entitled to recover.

In view of the errors that have been pointed out, the judgment must be reversed, and the cause remanded for another trial.

All the Justices concurring.