THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM- PANY v. P. D. SCHRIVER, as *Administrator*, etc.

No. 16,099.

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury at a Crossing—Contributory Negligence.* In an action against a railroad company to recover damages on account of a death caused by it at an ordinary country crossing the court instructed the jury, in substance, that a person about to cross a railroad track upon a public highway in front of an approaching passenger-train, which he sees, may assume that the train is not moving at a speed greater than usual; and if, with this assumption, the situation is such that a man of ordinary care would not regard an attempt to cross the track ahead of the train dangerous, it will not be deemed contributory negligence to make such an attempt. *Held*, error.

2. ——— *Speed of a Train.* Where a traveler is at an ordinary country railroad-crossing, and sees an approaching passenger-train, he must assume that such train may be running at any rate of speed which the business or necessities of the company require, and act accordingly.

Error from Chase district court; FREDERICK A. MECKEL, judge. Opinion filed July 3, 1909. Reversed.

### STATEMENT.

THIS action was commenced in the district court of Chase county, by the administrator of the estate of P. P. Schriver, deceased, to recover damages sustained by the next of kin on account of the death of P. P. Schriver, who was killed while crossing the defendant's railroad near Cedar Point, in that county.

It appears from the evidence that P. P. Schriver, on February 16, 1907, in company with Warren Peck, a neighbor, was returning from the funeral of a friend, in a buggy drawn by one horse. About four o'clock in the afternoon of that day they approached the railroad, and while attempting to cross it upon the public highway were struck by train No. 6, which is a fast train running between Chicago and Denver, and killed. At this time the train was running at an unusually high rate of speed, estimated at from sixty-five to eighty miles an hour. The weather was clear and the sun shone brightly. The ground in the direction from which the train came was comparatively level, and no obstacles intervened to prevent the train from being seen. At that time, however, the sun was in such a position that it shone directly into the eye of a person looking in the direction of the train and interfered with the vision. A wind was blowing, and it carried the rumble and noise of the running train away from the deceased. The road has double tracks between the stations east and west of the crossing in question, and the train was running on the south, or east-bound, track. The horse being driven to the buggy in which the deceased was riding was gentle and well in control of the driver.

The administrator recovered a judgment against the railroad company, and it brings the case here for review.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the plaintiff in error.

*W. E. Stanley,* and *L. B. Kellogg,* for the defendant in error.

The opinion of the court was delivered by

GRAVES, J.: Several assignments of error have been presented and argued, but in the view we have taken one only need be considered. The plaintiff in error complains of several instructions given to the jury by the court, but it especially criticises those numbered 10 and 11, which read:

"(10) If you believe from the evidence that the plaintiff's intestate saw the approaching train and without negligence on his part failed to observe from his position the unusual speed at which it was running, if it was running at an unusual speed, so that his conclusion that he could safely cross before the train reached the crossing was not an unreasonable one, he will be exonerated from contributory negligence on this account; because it is not negligence in law for a person in the exercise of ordinary care and caution to cross a railroad track upon a road-crossing in front of an approaching train which he has seen and which does not appear to him to be dangerously near, and which would not have been so in fact if it had not been running at an unusual rate of speed.

"(11) No principle of law requires that a traveler in a vehicle should stop his team and wait the passing of an approaching engine and train if he discovers an engine and train on the line at such a distance as that in the exercise of reasonable care and prudence he believes he may safely proceed on his way and cross the track. In such a case the question of fact for the jury is, Did he use reasonable care and caution in determining whether or not he could safely cross the track?"

The rule of law stated in these instructions can not, as we view it, be applied to ordinary railroad-crossings. A similar rule has been upheld by this court when applied to the operation of street-cars in a city (*Railroad Co. v. Gallagher,* 68 Kan. 424, 429), but never to

a situation such as this case presents. The similarity between the operation and management of an ordinary street-car and the operation of a fast-running passenger-train, on a double-tracked railroad, through a level, open country, where speed is important, is not so great as to make the rules of management and control identical in each case. Street-cars are constructed and equipped to be operated along streets where people must and do constantly cross. The speed of the cars is comparatively slow, and sufficiently uniform to enable people to form a reasonably accurate judgment as to where the danger line is in crossing. Stops are so frequent that a very high rate of speed is practically impossible. The motorman manages the car with the knowledge that danger is always present and safety can only be secured by constant vigilance. The cars are equipped with appliances which, so far as possible, place them under control. People who are in danger expect to be protected from injury only so long as they themselves use ordinary care. This mutual dependence upon each other places the street-car service upon a plane of its own. It has little in common with the ordinary railroad, where compliance with the demands of public travel requires the operation of heavy passenger-trains over long distances, with few stops, and, at times, at as great speed as safety to the passengers will permit. The difference under which these means of traffic are necessarily operated is obvious and striking, and it seems reasonable that the rules of law applicable to them should be, in many respects, dissimilar.

If the rule in question were applied to railroads generally it would materially conflict with rules now generally recognized, and might seriously embarrass the transaction of the business of common carriers. It is now generally understood that an unusually high rate of speed is not of itself improper or negligent. In the open country, where no peculiar conditions exist which make it dangerous, and speed is not limited by statute,

trains may be operated at any speed which the existing exigencies of public traffic seem to require. (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284; 2 Thomp. Com. Law of Neg. §§ 1873, 2101.) Under the rule stated in the instructions a traveler at a country crossing, however slight the ordinary travel at such place, may attempt to cross, free from the imputation of contributory negligence, even though he hears and actually sees a train approaching, if, assuming the speed of the train not to be greater than usual, a man of ordinary care and caution would not regard such an attempt dangerous. Under such a rule every train would be compelled to approach all crossings at a speed not greater than the usual rate or accept responsibility for the consequences, and every traveler, when about to cross in front of an approaching train, might assume that it was not running at an unusual rate of speed, and act accordingly. If he should be mistaken in this assumption, and receive an injury on account of a miscalculation founded upon such mistake, the railroad company would be liable. Ordinarily, the rule now is that a person about to cross a railroad must assume that the speed of every train is as great as the business or necessities of the company require, and he must act accordingly. In volume 7 of the American and English Encyclopædia of Law, at page 438, the rule is stated as follows:

"If, with full knowledge of the near approach of a train, a traveler attempts to cross in advance of it, and merely miscalculates his ability to do so in safety, there can be no recovery for a resulting injury."

In support of the text numerous cases are cited, selected from many states. Any rule which encourages a race with an approaching train at every crossing would tend to increase the hazard at such crossings, impede the necessarily rapid movement of trains, and seriously embarrass their operation in locations where such restraint would be of very slight, if any, public protection. The criticism urged against the rule given

Railway Co. v. Schriver.

by the court appeals with especial force because the facts are such as to make it peculiarly applicable and almost certain to mislead the jury.

There were no witnesses who could testify whether or not the deceased took the precaution to look and listen for an approaching train before attempting to cross the track. The jury were instructed that, in the absence of such evidence, the law presumed that he performed this duty in obedience to the universal instinct of self-protection. The condition of the track was such that, assuming that the deceased looked, he must have seen the approaching train, and, having seen it, must have concluded that the crossing could be made in safety. Upon the assumption that the speed of the coming train was not unusually great, this conclusion was probably fully justified; in fact, however, its speed was extraordinarily great. This mistake was fatal. Haste in crossing was imperative. This necessity does not seem to have been appreciated, and the deceased was overtaken. Such collisions would probably occur more frequently if the law were as stated in the instructions in question. They could only be prevented by requiring all railroad trains to reduce their speed at every crossing so that travelers in the exercise of ordinary care could more accurately estimate the rate at which approaching trains might be running.

The tendency of these instructions to mislead the jury upon the question of contributory negligence under the facts of this case is too great to permit the verdict to stand. Other questions have been presented and discussed, but this disposes of the case, and nothing further need be considered.

The judgment of the district court is reversed, with direction to grant a new trial and proceed in accordance with the views herein expressed.