No. 26,330.

H. L. CROSS, *Appellant*, v. THE CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY, and B. BUCHLI, as Administrator of the Es-
tate of ALBERT COPP, Deceased, *Appellees*.

### SYLLABUS BY THE COURT.

1. RAILROADS—*Accident at Crossing—Negligence—Sufficiency of Evidence on
   Demurrer*. There was no evidence introduced to show negligence on the
   part of the railroad company, and its demurrer to the plaintiff's evidence
   was properly sustained.

2. CARRIERS—*Injuries to Passenger—Negligence—Sufficiency of Evidence on
   Demurrer*. It was error to sustain the demurrer of the administrator to the
   evidence of the plaintiff.

Appeal from Wabaunsee district court; ROBERT C. HEIZER, judge. Opinion
filed January 9, 1926. Affirmed in part and reversed in part.

*S. F. Wicker* and *Gordon A. Badger,* both of Eureka, for the appellant.

*Luther Burns, J. E. Dumars, A. E. Crane, B. F. Messick,* all of Topeka, *C.
E. Carroll* and *William Bowes,* both of Alma, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.:   The plaintiff sued the railroad company and the
administrator of the estate of Albert Copp for personal injuries re-
ceived in a collision between a passenger train operated by the rail-
road company and an automobile operated as a taxicab by Albert
Copp.   Judgment was rendered in favor of each of the defendants on
separate demurrers to the evidence of the plaintiff, who appeals.

The plaintiff, who had been a passenger on a Santa Fe train, left
that train at Alma, boarded a taxicab operated by Albert Copp, and
directed that he be taken uptown.   To go uptown from the Santa
Fe station, it was necessary to cross the tracks of the defendant rail-
road about a block from the Santa Fe station.   Between that sta-
tion and the track of the defendant railroad, there were some ob-
structions to the view on the left, although at a place sixty-five to
seventy-five feet from the track, there was an open space twenty-
one feet wide through which 500 to 1,000 feet of the railroad track
could be seen, and at thirty feet from the track there were no ob-
structions, and from there to the track at the crossing a clear view
could be had to the left for 500 to 1,000 feet.   The plaintiff looked to

Carriers, 10 C. J. pp. 607 n. 75, 858 n. 96, 863 n. 21, 1160 n. 95.   Railroads, 33
Cyc. pp. 943 n. 62, 945 n. 69, 959 n. 48, 970 n. 15, 974 n. 43, 1099 n. 1, 1102 n. 24.

Cross v. Chicago, R. I. & P. Rly. Co.

the right for approaching trains, but did not see any. There was none coming from that direction. At about eighteen or twenty feet from the tracks the plaintiff looked to the left, saw a train coming about one hundred feet away; called to the driver, "Dutch, there comes a train;" and reached for the door. The collision immediately occurred. The train was running forty-five to sixty miles an hour. The automobile was moving fifteen to eighteen miles an hour. The crossing was at the edge of the city of Alma, on a street running from the city to the Santa Fe Railway station. There was neither an automatic signal nor a signal man at the crossing. There was evidence which tended to show that the bell was not ringing as the train approached the crossing.

The plaintiff in a statement signed by him soon after the accident said:

"I do not know whether the bell on the engine was ringing or not. I heard the train whistling when we were at the west end of the Santa Fe depot just about the time that we left the depot for the crossing, but I did not think anything about it. It might have been whistling in to Alma depot then. Copp tried to stop, and put on all of his brakes, but the ground was kind of slick, and it seemed that the back end of the car skidded, and we did not strike the front end of the train, but struck the baggage car about the center of the car. The engine of the train did not hit our car. I thought we were about stopped when the car kind of skidded, and struck the train. We had practically stopped when we struck this train."

The plaintiff testified that he had no recollection of making such a statement about the accident, and denied that he had heard the whistle. One other witness testified that he did not hear the whistle.

1. The plaintiff contends that the evidence tended to show that the railroad company was negligent in operating its train at a high and excessive rate of speed; in not maintaining either an automatic signal or a flagman at the crossing; in not sounding the whistle on the engine sufficiently near to the crossing to warn travelers of the approach of the train; and in failing to sound the bell while the train was approaching the crossing. The railroad claims that there was no evidence to prove that it was negligent in any particular, and contends that the evidence showed that the plaintiff was guilty of such contributory negligence as precludes his recovery.

Was the railroad company negligent in running its train at a high rate of speed? Alma is a city of about eight hundred inhabitants. The Rock Island Railroad does not run through it, but

around it. The street where the accident occurred ran to the Santa Fe Railroad station, but did not go into the country. The train was the Golden State Limited, a through, fast train. In *A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284, 293, 38 Pac. 257, the court said:

"Cases may arise where the speed of a train may be considered by a jury, in connection with the location and other surrounding circumstances, upon a question of negligence. In densely populated districts, such as towns and cities, public safety requires the speed to be moderated. This crossing, as we have seen, however, was in the country, where there was no statutory or municipal regulation with respect to the speed of trains. In such cases there is no limit upon the speed at which trains may be run, except that of a careful regard for the safety of trains and passengers."

In *Land v. Railroad Co.,* 95 Kan. 441, 148 Pac. 612, the following language was used:

"Ordinarily it is not, and under the facts of this case it was not, negligence towards the section foreman to run a passenger train at a speed of forty-five miles an hour." (Syl. ¶ 2.)

In *Morris v. Railway Co.,* 103 Kan. 220, 225, the court said:

"It has been held that in places where no government regulations are prescribed 'there is no limit upon the speed at which trains may be run, except that of a careful regard for the safety of trains and passengers.'"

The train was not running at a negligently high rate of speed when the accident occurred.

Was the railroad company negligent in not maintaining an automatic signal or flagman at the crossing? Attention is again directed to the situation at this crossing with reference to the city of Alma. The crossing was not used except to go to and from the Santa Fe railroad station. That railroad regularly operated one train a day each way. No regulation, ordinance, or law requiring either an automatic signal or a flagman at this crossing were shown. We quote from *Grand Trunk Railway Co. v. Ives,* 144 U. S. 408, 421, as follows:

"As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence; although in some cases it has been held that it is a question of law for the court. It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must

Cross v. Chicago, R. I. & P. Rly. Co.

be first shown that such crossing is more than ordinarily hazardous: as, for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or, by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."

Other cases might be cited. There was not.evidence sufficient to warrant the submission of this question to the jury.

One of the contentions of the plaintiff is that the whistle on the engine was not sounded sufficiently near the crossing to warn travelers of the approach of the train. Section 66-2,120 of the Revised Statutes in part reads:

"A steam whistle shall be attached to each locomotive engine, and be sounded three times, at least eighty rods from the place where the railroad shall cross any public road or street, except in cities and villages."

There was evidence to show that the whistle was sounded and that the plaintiff heard it. The complaint is not that the whistle was not sounded, but that it was not sounded sufficiently near the crossing to warn travelers of the approach of the train. The contention implies an admission that the whistle was blown. When the whistle was blown, the railroad company did all that was necessary for it to do under the circumstances.

Plaintiff contends that the railroad company was negligent in failing to ring the bell while the train was approaching the crossing. In 33 Cyc. 959, the following language is found:

"A bell should be rung not only before crossing a street but so long as there is danger of encountering passers-by; but in the absence of statute it is not necessary to sound both bell and whistle, or to sound them continuously while passing a public crossing. In most jurisdictions, the giving of signals is now regulated by statute or ordinance, under which it is variously required that a bell shall be rung or a whistle sounded, either being sufficient under some statutes; that a bell only shall be rung at certain crossings as in cities; that such signals shall be given at or within a certain distance from the crossing, usually eighty rods; and that the ringing shall continue, or the bell or whistle be sounded continuously, until the crossing is passed or reached."

The physical conditions surrounding the crossing at which the accident occurred must be taken into consideration. When they are considered, it was not negligence for the railroad company to fail to ring the bell as the train approached the crossing.

2. The judgment against the administrator of the estate of Albert Copp, deceased, presents an altogether different question. Albert Copp was a common carrier of passengers. (*Lewark v. Parkinson*, 73 Kan. 553, 85 Pac. 601; 10 C. J. 607.) The plaintiff became a passenger in Copp's automobile to be taken from the Santa Fe station into the city of Alma. For that reason, the law governing common carriers in the transportation of passengers must control as between the plaintiff and the administrator. In *Cloud v. Traction Co.*, 103 Kan. 249, 173 Pac. 338, the rule was declared to be that:

"A carrier is bound to exercise the highest degree of care that is reasonably practical in safely carrying passengers and setting them down safely at their destinations.

"But the carrier is not an insurer of the safety of passengers, and an instruction which charged that it is the duty of the carrier to provide for the safe entry and exit of its patrons to and from its cars is subject to criticism, because it makes the carrier the insurer of the safety of the passengers." (Syl. ¶¶ 1, 2.)

That rule was first declared in this state in *Union Pacific Ry. Co. v. Hand*, 7 Kan. 380, where the court said:

"Railroad companies are required to use the utmost human sagacity and foresight, in the construction of roads, to prevent accidents to passengers." (Syl. ¶ 4. See, also, *S. K. Rly. Co. v. Walsh*, 45 Kan. 653, 26 Pac. 45; *A. T. & S. F. Rld. Co. v. Elder*, 57 Kan. 312, 46 Pac. 310; *Railway Co. v. Brandon*, 77 Kan. 612, 619, 95 Pac. 573; *Lynch v. Railway Co.*, 92 Kan. 735, 142 Pac. 938.)

In *Topeka City Rly. Co. v. Higgs*, 38 Kan. 375, 16 Pac. 667, the court said:

"A street railway company using cars drawn by horses upon rails, and carrying passengers for hire, is bound to exercise all possible skill, foresight and care in the running of its cars, so that passengers may not be exposed to danger on account of the manner in which the cars are run. 'All possible skill and care' implies that every reasonable precaution in the management and operation of street cars be used, to prevent injuries to passengers. It means good tracks, safe cars, experienced drivers, careful management and judicious operation in every respect. All possible foresight means more than this; it means anticipation, if not knowledge, that the operation of street cars will result in danger to passengers, and that there must be some action with reference to the future, a provident care to guard against such occurrences, a wise forethought and prudent provision that will avert the threatened evil, if human thought or action can do so.

"This rule applies in this state to all vehicles used to carry passengers for hire, the only difference being in the means and instrumentalities used (these being adapted to the particular mode of conveyance) rather than to the degree in which the preventive means are to be applied. To each and every

Cross v. Chicago, R. I. & P. Rly. Co.

method of carrying passengers for hire must be applied the greatest skill, care and foresight to which they are in their nature susceptible, to avoid liability for injuries occasioned by their operation. The best effort of the minds directing the operation of horse cars must be diligently applied, in devising ways and means to prevent injuries to passengers being carried thereon." (Syl. ¶¶ 1, 2.)

With this must be considered *Sharp v. Sproat*, 111 Kan. 735, 208 Pac. 613; *Naglo v. Jones*, 115 Kan. 140, 222 Pac. 116; *Cooper v. Railway Co.*, 117 Kan. 703, 709. In the last three cases cited, persons sought to be held liable for negligently driving automobiles were not acting as common carriers. Here the driver was a common carrier. In the three cases the law governing common carriers in their conduct toward their passengers did not apply; here that law does apply.

It cannot be said, as a matter of law, that the plaintiff was guilty of such contributory negligence as prevents his recovery from the administrator of the estate of Albert Copp, deceased. The demurrer of the administrator should have been overruled.

The judgment is affirmed as to the railroad company and reversed as to the administrator, and a new trial is directed as to him.

MARSHALL, J. (concurring specially): I concur in the judgment, but am of the opinion that the judgment in favor of the railroad company should be affirmed on the ground that the negligence of the plaintiff contributed to his injury, not on the ground that the railroad company was not negligent.