No. 27,574.

MRS. ANTHONY HEINEN, *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

(266 Pac. 35.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Accident at Crossing—Contributory Negligence—Judgment on Special Findings.* In an action against a railroad company to recover for the death of a person which occurred in a collision between an automobile in which the person killed was riding and the engine of a passenger train at a crossing of the railroad and a public road, it was not error for the court to render judgment for the defendant on the findings of fact returned by the jury and on all the evidence introduced on the trial.

2. SAME—*Crossing Signs—Sufficiency.* Section 66-2,121 of the Revised Statutes does not require railroads to maintain, at the crossings of railroads and public highways, crossing signs extending all the way across the public highway.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed April 7, 1928. Affirmed.

*Jerry E. Driscoll,* of Russell, and *John J. McCurdy,* of Lincoln, for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, and *David Ritchie,* of Salina, for the appellee.

---

Railroads, 33 Cyc. pp. 942 n. 56, 1143 n. 58; L. R. A. 1915E 535; 22 R. C. L. 999.

The opinion of the court was delivered by

MARSHALL, J.:　The plaintiff prosecutes this action to recover damages for the wrongful death of her husband. The trial was to a jury, which answered special questions and returned a verdict in favor of the plaintiff for $10,000. Judgment was rendered in favor of the defendant "upon the special findings of fact heretofore returned herein, and upon all the evidence admitted upon the trial." The plaintiff appeals.

The special questions submitted were answered by the jury as follows:

"1. On and prior to the 28th day of September, 1923, was the deceased, Anthony Heinen, familiar with said highway and railroad crossing? A. No.

"2. If you answer question No. 1 'No,' then state if, at said time, September 28, 1923, the defendant railroad company had provided sufficient and adequate danger signal or signals at or near said crossing so as to warn persons unfamiliar with said highway and crossing of the approaching dangers, if any? A. No.

"3. Did the defendant railway company at the time of the collision in question have a regular crossing sign in position at the crossing in question? A. Yes—cross-arm sign.

"4. If you answer the preceding question 'Yes,' then at what distance east of the crossing in question could such crossing sign be seen by travelers coming from the east towards said crossing on the road in question? A. About 125 feet to 150 feet.

"5. How far east of the crossing in question could a train coming from a southerly direction be seen by travelers coming west on the road in question? A. A train coming from a southerly direction and at a point about 55 feet south of said crossing, could be seen by a traveler coming from the east about 125 feet to 150 feet.

"6. At what distance from the crossing in question could a train coming from the south be seen from a point on said road? A. (a) Sixty feet east of the crossing? About 700 feet. (b) Fifty feet east of the crossing? About 1,300 feet. (c) Twenty-five feet east of the crossing? About 1,700 feet.

"7. At what rate of speed per mile per hour was the automobile driven by the deceased being run upon approaching the railroad crossing in question? A. About 30 miles to 35 miles per hour.

"8. At what rate of speed per mile per hour was the train in question being run just preceding the collision in question? A. About 20 miles to 25 miles per hour.

"9. Were there any obstructions on the defendant's right of way that obstructed the view of a train coming from the south? A. No.

"10. If you answer the preceding question 'Yes,' then state fully what such obstructions were?

"11. Were there any obstructions east of the defendant's right of way that obstructed the view of an approaching train from the south? A. Yes.

"12. If you find that the defendant was negligent in any manner, set out fully of what such negligence consisted? A. The defendant was guilty of negligence in that they did not comply with the statute which requires every railway corporation to erect and maintain certain kinds of signal at crossing of this kind.

"13. Were there any obstructions adjacent to the public highway east of the defendant's right of way, that obstructed the view of the crossing sign at the crossing? A. Yes.

"14. If you answer the preceding question 'Yes,' then state fully what such obstruction or obstructions were? A. The overhanging branches of a large elm tree.

"15. If you answer the thirteenth question 'Yes,' and answer question No. 14 by setting out what such obstructions were, then state where such obstructions were located? A. About 100 feet east of said crossing and adjacent to the public highway.

"16. If you answer question No. 13 'Yes,' then state how far east of the crossing in question such obstruction commenced to interfere with a plain view of the crossing sign? A. About 150 feet.

"17. Did the engineer of the defendant's train sound the engine whistle at a point approximately 80 rods away from the crossing in question, as it was coming toward said crossing in question? A. No.

"18. Was the deceased racing his car with the car of the witness Lowery, coming west on the public highway running east from the crossing in question? A. No.

"19. Did the deceased use any precautions to ascertain whether or not he was approaching a railroad crossing? A. No.

"20. If you answer question No. 19 'Yes,' then state fully what such precautions were? A. —."

1. Was it error for the court to render the judgment that was rendered for the reasons that were given? The evidence established that the plaintiff's husband was traveling into Emporia from the east on a paved highway which crossed the railroad tracks of the defendant near the city limits of that city. There was another automobile coming from the east at the same time, traveling to Emporia. At the railroad track there was an ordinary railroad crossing sign which could be distinctly seen from 125 to 150 feet from the railroad track. The crossing sign was a cross-arm sign consisting of two boards fastened to a post set by the side of the public road. The plaintiff's husband was riding alone in the car which he was driving. In the other car were several persons who were familiar with the crossing and knew where it was. Both cars collided with the engine of a passenger train running on the defendant's railroad from Emporia to Topeka. The car in which the plaintiff's husband was riding ran into the side of the engine, and he was instantly killed.

The car in which the other persons were riding was struck by the pilot of the engine and knocked off the track, and those in it were more or less injured. Outside the paved part of the road the railroad track was ballasted with white rock, which was visible for considerable distance. There were wing fences painted white, which were also visible. The two cars were struck at the same time, on the paved highway, one by the pilot of the engine and the other by the side of the engine.

The second question answered by the jury was to the effect that no adequate crossing sign had been provided by the defendant at the place of the injury. That finding was positively against the evidence. All of the evidence tended to prove that a crossing sign was there, and that it was such a crossing sign as is found at all crossings of railroads and public highways in the state of Kansas. The finding that there was no adequate danger signal at the crossing is contradicted by the answer returned by the jury to question No. 3, in which the jury says that there was a regular cross-arm sign at that place. The jury found that it could have been seem at a distance of 125 feet to 150 feet before reaching the track. The jury found that a train coming from the south could have been seen about fifty-five feet south of the crossing from a point 125 to 150 feet east of the crossing; about 700 feet from sixty feet east of the crossing; about 1,300 feet from fifty feet east of the crossing; and about 1,700 feet from twenty-five feet east of the crossing. At points further east, the view of the crossing was obstructed somewhat by the branches of a large elm tree standing on private property about 100 feet east of the crossing. The findings of the jury showed that the plaintiff's husband did not use any precaution to ascertain whether or not he was approaching a railroad crossing. No accident would have occurred if the occupants of the automobiles had been paying any attention to what was ahead of them and had made any effort to avoid injury. A person driving in an automobile along a public highway at a speed of thirty to thirty-five miles an hour who does not use any precaution to ascertain whether a railroad track is ahead of him, when a crossing sign can be seen and parts of the railroad track can be seen at a distance from the track sufficient to enable him to stop his car, is guilty of such negligence as prevents his recovery.

It may not be amiss to say that the evidence almost conclusively

established that the plaintiff's husband and the occupants of the other car were racing on the public highway when the collision occurred, and that neither the plaintiff's husband nor the occupants of the other car paid any attention to their surroundings. Their attention was absorbed in the race in which they were engaged. However, the jury found that they were not racing.

2. The plaintiff bases her right to recover on the contention that the crossing sign maintained by the defendant at the place of the collision did not comply with section 66-2,121 of the Revised Statutes, which reads:

"Every railway corporation shall cause boards to be placed, well supported by posts or otherwise, and constantly maintained across each traveled public road or street, when the same is crossed by the railway on the same level. Said boards shall be elevated so as not to obstruct the travel, and to be easily seen by travelers; and on each side of such board shall be painted in capital letters, 'Look out for the cars.' But this section shall not apply to streets in cities or towns, unless the corporation shall be required to put up such boards by the city or town authorities, or the officer having charge of such streets."

The plaintiff contends that the signboards should have extended all the way across the public road and should have been supported by posts on each side of the road. Such a sign could not be built so as not to obstruct travel and make it safe except at prohibitive expense. The sign maintained was the kind that has been in common use throughout the state since the first enactment of the law. The sign maintained was the kind that has been understood by all interested to comply with the law. Another construction of the law should not now be declared. The crossing sign complied with the law.

The plaintiff relies on *Harwood v. Missouri Pac. Rld. Co.*, 118 Kan. 332, 234 Pac. 990. In that case there was no crossing sign, and the track was hidden by mud, grass and weeds on the right of way. The condition of the crossing in that case was so different from the condition of the crossing in the present action that the rule declared in that case cannot be applied in the present one.

The judgment is affirmed.