No. 30,119.

CHARLES BAZZELL and NITTIE BAZZELL, *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

(5 P. 2d 804.)

filed December 12, 1931. Opinion

*William R. Smith, Alfred A. Scott, C. J. Putt,* all of Topeka, and *W. L. Huggins,* of Emporia, for the appellant.

*I. T. Richardson, L. W. Richardson,* both of Emporia, and *C. C. Carper,* of Eureka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: When Lois Bazzell was riding in an automobile driven by her brother, Roy Bazzell, over a private crossing of the railroad, the automobile was struck by a passenger train of the Atchison, Topeka & Santa Fe Railway Company, and she was instantly killed. Plaintiffs, the parents of Lois Bazzell, brought this action against the railway company to recover damages for the loss sustained by them upon the ground that the injury and death were caused by the negligence of the railway company. They recovered damages in the amount of $2,000, and from the judgment defendant appeals.

It appears that the Bazzell family lived in a farmhouse about 300 yards from a private railroad crossing, which had been in use for a considerable time. About four o'clock in the afternoon of a November day the deceased and her brother drove out over the private road leading from the home to the crossing, intending to go on out to a public highway on the other side of the railroad. As they went upon the crossing a passenger train traveling at a speed of about fifty-five miles per hour struck the front part of the automobile and the injury and death followed. When the train was within 300 feet of the private crossing a fireman on the engine saw the automobile approaching the crossing, which was then about ten or twelve feet from it, and apparently traveling at a speed of about fifteen miles an hour, he shouted "auto" to the engineer, who at once shut off the power of the engine, set the brakes, but the train could not, of course, be stopped in that distance, and the collision occurred.

The plaintiffs contend that the defendant was negligent first, in that the train was operated at an excessive rate of speed in view of the conditions existing at the crossing; second, that the railway company permitted a rank growth of vegetation to stand upon the right of way which concealed the view of the approaching train; third, its failure under the circumstances to sound any warning or other signal at the crossing; fourth, permitting the crossing to be out of repair and unsafe for use, and fifth, that those in charge of the engine operating the train were in a position to see the automo-

bile approaching the crossing in ample time to have sounded a warning which would have enabled the deceased to have stopped and escaped the injury and death. Special questions were submitted to the jury which were answered as follows:

"1. When Lois Bazzell, riding in the automobile, crossed the right-of-way line, going west on the private highway and immediately before the accident, what, if anything, prevented her from seeing the railroad track at its intersection with the road upon which she was being driven? A. Nothing.

"2. When Lois Bazzell reached a point fifty feet east of the crossing of the track as she was being driven west on the private road, how far to the northwest could she have seen the train approaching her if she had looked? A. Seventy-five feet.

"3. If you answer question No. 2 that she could not see it, state what prevented her from seeing it when she reached a point within fifty feet of the crossing of the defendant railway company. A. Vegetation.

"4. When Lois Bazzell, riding in the automobile, came within twenty-five feet of the railway track and of its intersection with the private drive upon which she was being driven, how far away was the train in question? A. Two hundred twenty feet.

"5. When Lois Bazzell, riding in the automobile, reached a point in the private way within twenty-five feet of the railroad track what, if anything, prevented her from seeing the train approaching the crossing? A. Weeds and grass.

"6. When Lois Bazzell reached a point on the private road upon which she was being driven fifteen feet east of the east rail of defendant's track at the crossing, could she have looked to the north and seen the approaching train for a distance of 200 feet? A. Yes.

"7. When Lois Bazzell, riding in the automobile, along said private way toward the west, reached a point seventy-five feet east of the crossing in question, what, if anything, prevented her from looking toward the northwest and seeing the right of way of the defendant railway company around and beyond the curve described in the evidence? A. Tall cornstalks.

"8. What was the nature of the ground at the intersection of the railroad track and the private drive in question as to being smooth, or uneven, hilly or level? A. Uneven.

"9. Was the railway crossing at the point where Lois Bazzell was struck by the train in good or bad condition for vehicles crossing at that point? A. Bad.

"10. If you answer question No. 9 that the railroad track and crossing was in bad condition, state what was wrong with it that made it bad. A. No filling between planks, no grading outside planks."

Motions were made to set aside several of the findings because they were contrary to the evidence and that the verdict was without sufficient support. These as well as a motion for a new trial were overruled, and it is insisted by the defendant that no negligence of the railway company was shown, but on the contrary negligence of

Bazzell was shown and practically found by the jury. This accident was before the court in the earlier case of *Bazzell v. Atchison, T. & S. F. Rly. Co.,* 133 Kan. 483, 300 Pac. 1108, in which the history of the collision was described and which resulted in a judgment for the defendant that was affirmed by this court. The deceased and her brother, Roy Bazzell, started in the joint undertaking of going to Madison and bringing home their brother, Earl Bazzell. In driving out from the home to the crossing, a distance of about 300 yards, a part of the distance a view of an approaching train was obstructed by cornstalks and other vegetation, and a part of the distance a view of the track or coming train could be seen by those in the automobile. The claim of the excessive speed of the train can hardly be regarded as negligence where it is running through the open country. (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284, 38 Pac. 257; *Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667, 44 Pac. 607; *Railway Co. v. Judah,* 65 Kan. 474, 70 Pac. 346; *Railway Co. v. Schriver,* 80 Kan. 540, 103 Pac. 994; *Greene v. Railway Co.,* 109 Kan. 334, 198 Pac. 956; *Cross v. Chicago, R. I. & P. Rly. Co.,* 120 Kan. 58, 242 Pac. 469.) Neither could the defendant be chargeable with negligence for not blowing a whistle and slowing down the train for a private crossing in the absence of proof that persons or property were seen, by those operating the train, to be in danger of injury. This view was recognized by the trial court where it instructed the jury—

"That a railroad is not required under the statutes of this state to ring a bell or sound a whistle when approaching a private crossing, such as the evidence shows the crossing in this case to be. Any omission to blow the whistle or ring the bell is not, therefore, presumed to be negligence on the part of the railway company in this case."

There was evidence tending to show that weeds and grass on the right of way near the track tended to obstruct the view at some points and in some directions. However, the track itself was in plain view of those driving towards the crossing. The deceased was familiar with the crossing and under the evidence must have known that she was approaching the railroad which was plainly visible regardless of the existence of weeds or grass on either side of it. Assuming that defendant was negligent in this or in some other respect, the finding of the jury with respect to her opportunity to see and understand the danger compel a holding that a recovery is barred by her contributory negligence. It was found that when she was

approaching the track where the accident occurred there was nothing to prevent her from seeing the railroad track, and further that when she reached a point fifty feet east of the crossing she could have seen the train approaching her if she had looked, a distance of seventy-five feet. When she was within twenty-five feet of the railroad track the train in question was 220 feet away. When she reached a point on the private road upon which she was being driven, fifteen feet east of the defendant's track, she could have seen the train approaching for a distance of 200 feet. Even when she was within fifteen feet of the track, there was plenty of time to have stopped the car and avoided the deplorable tragedy.

It is conceded that at the time of the accident the automobile was being driven slowly at a speed ranging from ten to fifteen miles per hour. In such a situation the law imposes the duty upon the traveler approaching a railroad crossing to exercise ordinary care for his own safety, and no one can recover for a personal injury which was the result of his own want of care. The deceased was approaching a known place of danger and had no right to venture on the track without looking for a coming train. In such a situation she should have used care in proportion to the danger of the situation. The traveler in the exercise of due care at a crossing should at least look for a train and assure himself that he can cross in safety. In *Bazzell v. Atchison, T. & S. F. Rly. Co.*, supra, the court held an instruction to be correct in which it was said:

"'If, therefore, you find from the evidence in this case that the deceased at or immediately prior to said accident could have seen or heard the approaching train or could have known that said automobile was approaching the railroad crossing, by the exercise of reasonable care on his part, in time to have avoided the injury, then you are instructed that the presumption of law that the deceased did exercise ordinary care is overcome.'" (p. 488.)

A look for the train when she was fifty feet from the track would have revealed the danger and a wait of a few seconds would have averted it, and when the deceased was fifteen feet from the track there was still time and opportunity to have stopped and avoided the collision. In a somewhat similar crossing case, *Reader v. Railway Co.*, 112 Kan. 402, 210 Pac. 1112, it was said:

"A traveler approaching a railway crossing must be vigilant in trying to see. (*Railway Co. v. Jenkins*, 74 Kan. 487, 488, 87 Pac. 702.) Ordinary prudence requires that an automobile driver use his faculty of sight near the track, where it will be of most benefit to him. (*Gage v. Railway Co.*, 91 Kan. 253, 258, 137 Pac. 938.) The time to look is when he is about to cross.

That is the time when he is about to encounter the danger portended by a railway crossing, and it is not enough that he look at a point some distance from the crossing, when looking on nearer approach would reveal danger. (*Railway Co. v. Wheeler*, 80 Kan. 187, 191, 101 Pac. 1001; *Beech v. Railway Co.*, 85 Kan. 90, 95, 116 Pac. 213.)" (p. 404.)

See, also, *Greene v. Railway Co.*, supra; *Brown v. St. Louis-San Francisco Rly. Co.*, 121 Kan. 32, 245 Pac. 1034; *Heinen v. A. T. & S. F. R. Co.*, 125 Kan. 612, 266 Pac. 35, and cases cited.

The court in its instructions in this case recognized the rule of contributory negligence, where it said:

"If you find from the evidence in this case that before the automobile in which Lois Bazzell was riding entered upon the track of the defendant railway company there was an opportunity for her to look and to see the approaching train, and if you further find from the evidence that if she had so looked she could have seen the approaching train in time to have stopped, or caused to be stopped, the automobile, or warn the driver thereof of the approach of the train, and thereby prevented the collision which resulted in her death, then you are instructed that under the law it is presumed that she did see the approaching train and that it was her duty to immediately stop the automobile, or warn the driver thereof of the approaching train, and not to permit it to enter upon said track in front of said approaching train, if it were possible for her to do so, and failing in this her negligence in that respect will bar a recovery in this action."

Since it was the duty of those in the automobile to stop it and await the passing of the railway train, the roughness of the private crossing is not a material feature of the case.

Under the facts found by the jury, and the well-settled rules of law applicable to them, it must be held that the deceased traveler failed to exercise ordinary care for her own safety and that as her negligence contributed to the injury and death, no recovery can be had by plaintiffs.

The judgment is therefore reversed and the case remanded with directions to enter judgment for defendant.