**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Appellant,**

**v.**

**HUGH BREEDING, Inc., a corporation, Appellee.**

**No. 5199.**

United States Court of Appeals Tenth Circuit.

March 20, 1956.

Nell Rhodes Fisher, Oklahoma City, Okl. (Robert E. Shelton, of Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., were with her on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., were with him on the brief), for appellee.

Before HUXMAN and PICKETT, Circuit Judges, and MELLOTT, District Judge.

HUXMAN, Circuit Judge.

This is an appeal from a summary judgment for the United States District Court for the Western District of Oklahoma, awarding Hugh Breeding, Inc.,[1] an Oklahoma corporation, judgment in the sum of $7,939 against the Chicago, Rock Island and Pacific Railroad Company[2] and denying relief upon its cross-complaint. Before entering judgment for Breeding, the court overruled the railroad's motion to transfer the case to the United States District Court for Kansas at Wichita for trial under the provisions of 28 U.S.C.A. § 1404(a).

The action arose out of a collision between an oil transport truck belonging to Breeding which was stalled on the railroad crossing at 37th Street, north of the city limits of Wichita, Kansas, and a train being operated by the railroad company. The company alleged as grounds for recovery that the railroad company was guilty of negligence in operating its train at a high and dangerous rate of speed under the circumstances, towit, in excess of 40 miles per hour; that the weather and visibility were very bad; and that the agents of the railroad company failed to heed warnings by flagmen who were attempting to stop or retard the train prior to its reaching the crossing. In addition to its answer, the railroad also filed a cross-complaint in which it alleged the collision was due to the negligent manner in which Breeding operated its truck and that such negligence resulted in damage to the railroad company's equipment for which recovery was sought.

The evidence before the court in the form of depositions upon which summary judgment was granted showed these facts. Gainer, the driver of the truck, left Tulsa, Oklahoma, on the morning of the day of the accident with a load of gasoline which he unloaded in Wichita, Kansas, about 5:30 p. m. It had been snowing and the roads were slick and slippery. He had chains with him but did not put them on the tires. After unloading his gasoline he went to Phillips Petroleum Company in North Wichita where he loaded his truck with more gasoline to be delivered to an air line company at Tulsa, Oklahoma. 37th Street is in the country adjacent to Wichita on the north. It runs east and west and is immediately south of Phillips' plant where Gainer obtained his load of gasoline. Upon leaving Phillips' plant, Gainer turned left on 37th Street, intending to cross a railroad track which was near by and at right angles to the street. As he turned left onto 37th Street, the left rear wheel of the truck slid off the north side of the street and, as he put it, he was "stuck." The tractor of the truck was sitting squarely on the railroad track.

Being unable to extricate the truck, he left it and ran to a near by place to attempt to contact the railroad office by phone but was unable to do so. In the meantime two motorists stopped and proceeded north along the right of way

---

1. Herein called Breeding.

2. Herein called railroad.

in an attempt to flag the train which was approaching at about 40 miles per hour. Because of the weather conditions the trainmen were unable to see them from any appreciable distance. The flagmen were observed at about the same time the truck was seen on the track. The engineer applied the emergency brake but was unable to stop before hitting the truck.

It is without dispute that visibility was very poor and that because of whirling and swirling snow along the ground the engineer could see but a very short distance ahead of the engine. One witness testified the visibility was about thirty feet. The engineer testified that conditions were nearly blizzard conditions and that at most he could see about one hundred feet and that he could not stop within the range of his vision at the speed he was going. There was testimony by a railroad brakeman that the railroad had a rule that "if you can't see, why then you are going to slow down to where you can see." Other railroad witnesses testified there was no such rule. There was other testimony "That the condition of the whole thing would govern the operation of the train." This in substance was the evidence upon which the trial court granted summary judgment for plaintiff.

■ Preliminary to a consideration of the principal question, we must dispose of appellant's contention that the trial court erred in refusing to sustain its motion for a change of venue from the Western District of Oklahoma to the United States District Court of Kansas at Wichita.[3] Section 1404(a) is a new section in the Code. The subject matter thereof relates to the old doctrine of *for-um non conveniens*. By the adoption of this section Congress intended to broaden the old doctrine of forum non conveniens and to especially ameliorate the harshest part of the old rule which required the court to either retain the case or dismiss it. It is the spirit of the new section to vest the trial court with the exercise of a reasonable discretion in determining whether it would exercise its jurisdiction or transfer the case to another forum for trial.[4] It has been held that the judgment of a trial court will be reversed only where the appellate court finds there has been an abuse of discretion.[5]

■ In Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, the Supreme Court said that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Various courts have adhered to this pronouncement.[6]

Here we have practically no dispute as to what occurred. Neither is the amount of damage suffered by either of the parties in dispute.[7] The eyewitnesses to the accident are few in number and their testimony is not in conflict. They consist of the driver of the truck, the two persons who undertook to flag the train and the engineer and his fireman who were in the engine at the time of the accident. Even the conductor of the train is not a key witness. His testimony at most would seem to be cumulative and perhaps corroborative of that of the engineer and the fireman, testimony which is not disputed. The police officer and the deputy sheriff, who testified he was a candidate for sheriff, came upon the scene after the accident and can testify

---

3. 28 U.S.C.A. § 1404(a) provides:
   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4. Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789.

5. General Portland Cement Co. v. Perry, 7 Cir., 204 F.2d 316.

6. Nicol v. Koscinski, 6 Cir., 188 F.2d 537, and cases there cited; General Portland Cement Co. v. Perry, 7 Cir., 204 F.2d 316.

7. The amount of damage suffered by Breeding and the Railroad Company was stipulated.

to nothing materially challenging the testimony of any of the eyewitnesses.

The affidavit in support of the motion for transfer in substance states that the railroad will be required to have in attendance twenty witnesses who are residents of Kansas; that of these, ten are not employed by the railroad; that to compel them to attend the trial in Oklahoma will be a serious burden to them; and that the railroad cannot force nonemployee witnesses to attend the trial. These statements in our opinion are insufficient to discharge the heavy duty resting upon the railroad to obtain a transfer of the case to the Kansas court. We reach this conclusion without taking into consideration the considerable burden on the plaintiff, a resident of Oklahoma, to bring or compel its witnesses to come to Wichita.

It is not sufficient to merely state that the railroad has twenty witnesses it must transport to Oklahoma. To discharge the burden resting upon it, it was necessary to set out in the affidavit the substance of the evidence of these witnesses so the court in reaching its conclusion might consider the materiality thereof or whether it tended to establish a material fact different from that of the eyewitnesses or whether it tended to contradict material testimony of other witnesses.[8] In the absence of any showing as to materiality of the evidence of these twenty witnesses, merely stating that the railroad is compelled to transport ten of its employees to Oklahoma and that it may not be able to compel the attendance of the ten nonemployee witnesses is not sufficient for us to conclude that the trial court abused its discretion in refusing to transfer the case to the Kansas Court.

The allegation of negligence upon which Breeding relied for recovery was that the train was being operated at an excessive rate of speed under existing weather "to-wit, in excess of 40 miles per hour" and because of such speed the engineer was unable to stop the train in time to prevent the collision with the truck because of poor visibility. The theory upon which the court predicated its summary judgment was that it was the duty of the railroad to operate its train at such a speed so it could be stopped within the assured distance ahead and since under the undisputed facts of the case the train was not being so operated plaintiff was entitled to judgment.

It is generally held and certainly that is the established law of Kansas that a high rate of speed in the open country does not in and of itself and without more constitute negligence.[9] But Kansas has never said that a high rate of speed in open country may not under certain conditions and circumstances constitute negligence. In every case in which the Kansas court has considered the question of high or even very high rate of speed in open country, it has indicated that peculiar conditions may impose liability because of such high rate of speed, even outside the city limits. The following statement by the Kansas court in Atchison, Topeka & Santa Fe Railway Co. v. Schriver, 80 Kan. 540, 103 P. 994, 995, that "it is now generally understood that an unusually high rate of speed is not of itself improper or negligent. In the open country, where no peculiar conditions exist which make it dangerous, and speed is not limited by statute, trains may be operated at any speed which the existing exigencies of public travel seem to require", appears in substance in many decisions. Here the train was approaching a large city where highway traffic was bound to be heavy. 37th Street adjoined the City of Wichita on the north. It is doubtful if it can be said that this constituted open country. Visibility was almost zero. According to

8. Goodman v. Southern Railway Company, D.C., 99 F.Supp. 852; Jenkins v. Wilson Freight Forwarding Company, D.C., 104 F.Supp. 422.

9. See Chicago, Rock Island & Pacific Railroad Co. v. Consumers Cooperative Association, 10 Cir., 180 F.2d 900, and Kansas cases there cited.

the engineer's testimony he could see at most one hundred feet in front of the engine which was woefully inadequate to bring the train to a stop at the speed at which he was going. Whether it was negligence on his part under such conditions to operate his train at the edge of the City of Wichita at 40 miles per hour is to say the least a question upon which reasonable minds might differ. We, therefore, think it was a question of fact for the jury and not for the court. Negligence ordinarily is a fact question and that is so even though there be no conflict in the evidence if different conclusions can be drawn therefrom. It is only in those rare cases where but one conclusion can be drawn from the evidence that a court is warranted in deciding the question of negligence as a matter of law, and this in our view is not such a case.

There is yet another reason why summary judgment should not have been entered for Breeding. The railroad's answer as an additional defense charged the driver of the truck with negligence which in any event contributed to the accident. It was charged that he was guilty of negligence in operating the truck on the slick and slippery highway without installing the chains which he had with him. Whether chains would have prevented him from slipping into the ditch may be a disputed question of fact. The driver did testify that the roads were slick and slippery. Whether he was negligent in not attaching the chains or in respect to the other acts of negligence charged and whether such acts contributed to the accident is a debatable issue which should have been submitted to the jury.

Reversed and remanded.

As to that portion of the opinion dealing with the motion to transfer under § 1404(a), 28 U.S.C.A., PICKETT, Circuit Judge, concurs only in the result.