Chester D. CLENDENIN
v.
UNITED FRUIT CO., Inc.
Civ. A. No. 31546.

United States District Court
E. D. Pennsylvania.
Feb. 6, 1963.

**139**

Sidney J. Smolinsky, Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for plaintiff.

Robert N. Ferrer, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

Plaintiff is a seaman who was injured at sea aboard the S. S. Yaque on August 17, 1961. Defendant has moved under 28 U.S.C.A. § 1404(a) to transfer the action to the District Court for the Eastern District of Louisiana.

■ Certain principles are now entitled to hornbook characterization: The plaintiff's choice of forum is entitled to great weight and defendant has a heavy burden of showing a strong balance of inconvenience. With these guideposts in mind, I proceed to examine *seriatim* the reasons advanced by defendant for transfer.

■ 1. Plaintiff's residence is in Tyler, Texas. I attach no significance to this fact. While it may be inconvenient for plaintiff to come to Philadelphia, I think he's entitled to inconvenience himself if he wants to without defendant's interference.

■ 2. Defendant's main office is in Boston, Massachusetts, with a principal office in New Orleans. However, since the accident happened at sea, the location of *a* principal office, in itself, hardly ties that location to the accident. Of more significance, and weighing against transfer to New Orleans, is the fact that defendant's main claim office, which supervises all claims, is located in New York City.

■ 3. Plaintiff joined the vessel in Baltimore, Maryland, on August 2, 1961, and left its service in New Orleans on October 10, 1961, when the vessel was laid up for repairs. Again, these facts have no more operative connection with the accident than does the fact that plaintiff's first voyage terminated in New York and his second and third trips began and terminated in New York.

■ 4. The vessel (S. S. Yaque) sails almost continuously in and out of New Orleans. I cannot believe that the absence of the ship from the forum means anything. Pictures, which defendant can certainly obtain, will supply any visualization thought to be necessary. (I have never heard of a case being continued because the ship was at sea.)

■ 5. Plaintiff gave a statement to defendant's employe, an investigator, who lives in New Orleans, before plaintiff was represented by counsel. Plaintiff is entitled to a copy of his statement [Pasterak v. Lehigh Valley Railroad Co., 28 F.R.D. 383 (E.D.Pa., 1961)], so that plaintiff would have received no windfall if defendant had attached it to the motion, or at least had shown its substance so that the court could test its materiality. In Chicago, Rock Island & Pacific R. Co., v. Hugh Breeding, Inc., 232 F.2d 584, at page 588 (C.A.10, 1956), the court said:

"* * * It is not sufficient to merely state that the railroad has twenty witnesses it must transport to Oklahoma. To discharge the burden resting upon it, it was necessary to set out in the affidavit the substance of the evidence of these witnesses so the court in reaching its conclusion might consider the materiality thereof or whether it tended to establish a material fact

different from that of the eyewitnesses or whether it tended to contradict material testimony of other witnesses. In the absence of any showing as to materiality of the evidence of these twenty witnesses, merely stating that the railroad is compelled to transport ten of its employees to Oklahoma and that it may not be able to compel the attendance of the ten nonemployee witnesses is not sufficient for us to conclude that the trial court abused its discretion in refusing to transfer the case to the Kansas Court. * * * "

See also: National Tea Co. v. The Marseille, 142 F.Supp. 415 (S.D.N.Y., 1956).

Mere speculation as to what might be in a statement which may never become relevant furnishes no ground for disturbing a plaintiff's choice of forum.

■ 6. The receipt of maintenance payments in New Orleans, and the information relating to plaintiff's employment, wages, accident and claim can be made available here by the simple expedient of mailing the documents to Philadelphia.

■ 7. Plaintiff was examined in New Orleans on October 9, 1961, by Dr. Wayne Gilder, a New Orleans resident. Again, we have no showing of what his testimony would be, or how material. In addition, according to the complaint, plaintiff's injury is an olecranon bursitis, not a complicated medical problem. Cf. Biedrzycki v. Alcoa Steamship Co., Inc., 191 F.Supp. 895 (E.D.Pa., 1961). On the other hand, plaintiff received a pre-employment physical examination by defendant in Baltimore which would provide proof of plaintiff's physical condition before the accident and which would not be available by subpoena from New Orleans, but could be subpoenaed from Philadelphia.

■ 8. Inpatient and outpatient treatment was given at the United States Marine Hospital in New Orleans. Evidence of this sort is usually given by deposition, which will be of equal effect whether the case is tried in New Orleans or Philadelphia. Cf. McFarlin v. Alcoa Steamship Co., Inc., 210 F.Supp. 793 (E.D.Pa., 1962).

■ 9. There are four "fact" witnesses, three of whom reside in New Orleans and one in Alabama. They are all still employed by defendant. The quotation from Chicago, Rock Island & Pacific R. Co. v. Hugh Breeding, Inc., supra, is equally relevant here. There is not the slightest showing of what "facts" they know, of whether the "facts" are material, or that their testimony is not merely cumulative. Furthermore, Thomas H. Walker, defendant's General Claim Agent, whose affidavit has been filed in support of the motion and who is "thoroughly familiar" with the contents of the file on this claim, testified on deposition on September 12, 1962, more than a year after the accident (pp. 15–17):

"Q Does the accident report indicate what persons or crew members of the vessel, if any, may have witnessed the alleged occurrence?

"A Yes.

"Q In that respect, what does the report disclose?

"A It indicates there were *two* witnesses.

"Q What are their names and ratings?

"A One is Norbert C. Gobin, boatswain, and the other is Paul J. Ksenzulah, O.S., ordinary seaman.

"Q Does the accident report indicate when these men were first interviewed?

"A No.

"Q Or who interviewed them?

"A No.

"Q Does the accident report indicate what, if anything, they saw with respect to the occurrence?

"A No.

"Q Does the accident report indicate whether or not any cause of the accident was commented upon?

"To rephrase it, are there any comments in the report as to the cause of the accident by those persons who may have investigated the occurrence or witnessed it?

"A There is in the report the statement of the claimant, or plaintiff, as to what occurred.

"Q But except for that, the report is barren as to how the accident occurred?

"A That is correct.

"Q When was this report sent to the company, and to what office?

"A All I can tell you is that the particular one that I have in my file was received in this office on August 30, 1961.

"Q Can you tell me whether or not, as part of your routine investigation of this case, the boatswain, Mr. Gobin, was interviewed by some member of your staff or a representative of the company?

"A No, I can't tell you.

"Q Can you tell me whether or not the ordinary seaman, Ksenzulah, was interviewed by any investigator or an agency at your request?

"A No.

"Q You cannot tell me, or he was not?

"A I can't tell you.

"Q Do you have in your files any statements by these individuals?

"A No."

This is enough in itself to negate the importance of this ground for transfer. But even if these witnesses should, for reasons not disclosed in the motion, turn out to be important, it must be borne in mind that they are seamen. " * * *

While the defendant has stressed that the seamen witnesses all reside in or near the Southern District of Texas, the very fact that their witnesses are seamen dilutes the importance of this factor; by the nature of their employment seamen are often unavailable as witnesses and their testimony must then be submitted in deposition form. In the case at bar the fact that another district is more convenient to witnesses who may testify is not a sufficiently strong factor to overcome plaintiff's venue privilege. * * * " Medich v. American Oil Company, 177 F.Supp. 682, 683 (E.D.Pa., 1959), Biggs, C. J.

■ 10. Finally, defendant alleges that this case will be reached for trial more quickly in the Eastern District of Louisiana than here. There is some doubt as to the validity of this claim [see McFarlin v. Alcoa Steamship Co., Inc., 210 F.Supp. 793 (E.D.Pa., 1962)], but in any event, this "is never a factor to which great weight is assigned." Peyser v. General Motors Corporation et al., 158 F.Supp. 526, 530 (S.D.N.Y., 1958). Since plaintiff has chosen this forum, I do not deem it of sufficient weight to overturn that choice.

It is true, as stated by Judge Freedman in McFarlin, supra, that "in the end each case is unique and must be decided on its own circumstances." However, it is not amiss to point out the somewhat significant number of cases that have refused transfer of a seaman's action from Philadelphia or New York to southern port cities. Biedrzycki v. Alcoa Steamship Co., Inc., supra; Medich v. American Oil Company, supra; Lykes Bros. Steamship Co. v. Sugarman, 272 F.2d 679 (C.A.2, 1959); National Tea Co. v. The Marseille, supra; McFarlin v. Alcoa Steamship Co., Inc., supra.

Defendant's motion to transfer is denied.