**HOUSTON FEARLESS CORPORATION, Appellant,**

v.

**Guy TETER, Appellee.**

**No. 7266.**

United States Court of Appeals Tenth Circuit.

June 13, 1963.

George Louis Creamer of Creamer & Creamer, Denver, Colo., for appellant.

William P. Johnson, Denver, Colo. (Rothgerber, Appel & Powers, Denver, Colo., were with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal, under the provisions of 28 U.S.C. § 1292(b), is from an interlocutory order of the lower court denying defendant-appellant's motions to quash the service of process and to dismiss the complaint for want of jurisdiction and upon the basis of improper venue or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1404(a). The questions presented are whether, under the facts of the case, defendant-appellant was doing business within the State and District of Colorado within the meaning of the venue provisions of 28 U.S.C. § 1391(c) and, if so, whether as a matter of convenience, venue should be changed to another district under § 1404(a).

The facts as found by the lower court and established by the oral testimony, affidavits, counter-affidavits and the answers to requests for admissions and interrogatories are not in dispute. These facts disclose that appellee, Teter, is a resident of the State of Colorado and the appellant, Houston Fearless Corporation (Houston), is a California corporation with its principal offices and place of business located in Los Angeles, California. Houston does not maintain any corporate office in Colorado and has never done so; it has never applied for authority, or been qualified, to do business in Colorado; it has never authorized or appointed an agent for service of process in Colorado, and it does not have, and has never had, any officer, agent or employee, except as herein disclosed, a resident of Colorado. Houston is engaged in the manufacturing business and no part of such manufacturing activity is conducted in that state.

Houston, in 1960, was desirous of obtaining sales representation in the Denver, Colorado, and Salt Lake City, Utah, areas. It was especially interested in making sales of its products and services to the Martin Company in the Denver area. To that end, Houston entered into negotiations with Teter, who was then employed as a buyer by Martin, to become its sales representative in the States of Colorado and Utah. As a result of these negotiations, Teter terminated his employment with Martin and entered into a written agreement with Houston[1] which became effective on November 7, 1960. This agreement, which could be terminated by either party upon 60 days written notice, referred to Teter as the "Representative" and covered "sales and engineering liaison services" to be performed by him in Colorado and Utah. Under the terms of the agreement, Houston agreed to pay Teter a commission at a specified rate based upon the dollar volume of sales made by him. Houston also agreed to pay him the sum of $400 per month as a retainer, plus expenses not to exceed $250 per month, or a total not to exceed $650 per month. However, the monthly retainer payment was to be deducted from the amount of commissions payable to him and, therefore, Teter's compensation for his services in securing purchase orders and developing markets and sales for Houston's products was on a commission basis even though he did receive a monthly retainer payment.

Teter's duties as Houston's representative were spelled out in considerable detail in the agreement. It provided that his duties should include but were not limited to: (1) Assisting Houston in obtaining sales leads and contracts; (2) assisting Houston in negotiating purchase orders and contracts; (3) providing adequate technical liaison both prior to and after receipt of an order and continuing such liaison until the items ordered were delivered and accepted; (4) providing liaison with customers as might be required after delivery of any items so as to insure customer satisfaction and good-will; and (5) assisting Houston in resolving any problems as to payment or settlement by the customer for goods delivered or services performed.

This agreement was terminated by Houston as of June 30, 1961, and Teter thereafter commenced this diversity action to recover commissions allegedly due and owing to him under such agreement. Service of process was made upon an officer of appellant corporation by the United States Marshal, within the District of Colorado, pursuant to the provisions of F.R.Civ.P. 4(d) (3), 28 U.S. C.A. The lower court in denying appellant's motions attacking the sufficiency of such service specifically found and held that Houston was doing business in Colorado within the meaning of 28 U.S.C. § 1391(c), and that the service of process was proper and valid. The court concluded that the District of Colorado was the proper venue for the action and that it had jurisdiction. We allowed this interlocutory appeal. Houston Fearless Corporation v. Teter, 10 Cir., 313 F.2d 91.

Appellant in its brief first argues that it was not doing business in the State of Colorado and therefore the lower court was without jurisdiction to entertain the action because venue was improper in the Colorado district. For the answer to this contention, we look to the federal venue statute, 28 U.S.C. § 1391(c), which, insofar as pertinent here, provides as follows:

"A corporation may be sued in any judicial district in which it * * * is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

---

1. The agreement with Teter was actually entered into on appellant's behalf by Horkey-Moore Associates but Horkey-Moore is a division of Houston and a trade-name used by it. We will therefore refer to Houston as the contracting party.

The historical background of venue in the federal courts is interesting, but we will not unnecessarily extend the length of this opinion on it as there are several excellent discussions to be found elsewhere.[2] From an examination of these discussions, it is apparent that the questions of venue under § 1391(c) and service of process under the various state statutes are so intertwined that it is difficult to separate the principles of law involved. Concededly, as to both questions, the courts must determine what constitutes "doing business".

■■■ Professor Moore, in recognizing the difficulties which are encountered in reaching an answer to our problem, states:

"There is a good deal of confusion among the decisions as to the meaning of 'doing business,' as used in § 1391(c), because of the following factors: the courts' use of the term 'doing business' in connection with venue and also with the amenability of the defendant corporation to service of process; whether this latter matter, at least in diversity cases, is governed by state law, subject to federal constitutional limitations; if it is governed by state law, does state law determine whether a corporation is 'doing business' for federal venue purposes; and because the Supreme Court has greatly broadened the rule as to when a corporation is amenable to service and in so doing has used other language than 'doing business.' We believe that the construction of § 1391(c) involves a federal matter; that state law is not controlling; and uniformity in applying § 1391(c) is desirable. And, although the matter is not free from doubt, and there is very respectable *contra* authority, we believe that if a corporation is

amenable to service of process it should be held to be 'doing business' for venue purposes. * * *"[3]

We agree that federal law must be applied to determine whether Houston was "doing business" in Colorado for venue purposes,[4] and that the test of "doing business" is the same for that purpose as it is for determining whether a corporation is amenable to service of process. We may therefore look to the meaning and content generally accorded to the term "doing business" in cases involving the question of whether the service under a state statute comports with due process. The landmark case on this subject is, of course, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In that case the Supreme Court said at page 316 of 326 U.S., at page 158 of 66 S.Ct.:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. * * * But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * *"

And, further, at page 317 of 326 U.S., at page 159 of 66 S.Ct.:

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous

**2.** 1 Moore's Federal Practice, § 0.142 [5.—3], p.p. 1489–1503; 1 Barron and Holtzoff, Federal Practice and Procedure, § 80, p.p. 384–394; 3 Cyclopedia of Federal Procedure, §§ 4.13, 4.14, p.p. 29–39.

**3.** 1 Moore's Federal Practice, § 0.142 [5.—3], p.p. 1497–1500.

**4.** See also Jaftex Corporation v. Randolph Mills, Inc., 2 Cir., 282 F.2d 508.

and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. \* \* \* Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. \* \* \* To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process."

This court, in Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179, cert. denied, 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362, followed the test laid down by International Shoe, stating at pages 682 and 683 of 179 F.2d:

"While leaving every case to its own facts, it is generally understood that to constitute 'engaging in or transacting business' in a state, so as to be found or present there for purposes of personal service, a nonresident corporation's activity there must be 'substantial', 'continuous', and 'regular', as distinguished from 'casual', 'single', or 'isolated' acts. \* \* \*"[5]

This test was again applied by this court in the recent case of Curtis Publishing Company v. Cassel, 10 Cir., 302 F.2d 132. Judge Breitenstein in his opinion stated at page 136 of 302 F.2d:

"We believe that International Shoe is controlling and that the instant controversy must be resolved by the application of the principles there announced. Those principles

are stated as conclusions and do not provide the criteria required to sustain themselves. We followed International Shoe in Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 682–684, 18 A.L.R.2d 179, certiorari denied 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362 and there said that, leaving every case to its own facts, to constitute doing business a nonresident corporation's activities must be substantial, continuous, and regular as distinguished from casual, single, or isolated. We shall apply these standards here."

■ So, here, the principles of International Shoe are controlling and the question of whether Houston was "doing business" in Colorado for venue purposes must be resolved by application of such principles. When these principles are applied to the facts in this case, we believe it is clear that Houston was "doing business" in Colorado.

The facts show that in pursuance of his duties under the agreement, Teter contacted Martin in an effort to promote an arrangement whereby Houston would be qualified to submit bids for the sale of its products to Martin. It appears that Martin's practice was to purchase its required materials and equipment by inviting various suppliers to make bids and only those suppliers who had been determined by Martin to be qualified were invited to submit such bids. After a bid was accepted by Martin a contract was awarded to the successful bidder. As a result of Teter's efforts and after a physical survey of Houston's facilities was made and furnished to Martin, Houston was placed on Martin's list of qualified bidders. Thereafter, Houston received invitations to make bids and numerous contracts or purchase orders were awarded to it providing for the supplying of certain products and services. These contracts or purchase orders provided for the delivery

---

5. Citing, International Shoe Co. v. Washington, supra; Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; 18 Fletcher Cyclopedia Corporations, §§ 8711, 8713, 8715.

of the products manufactured by Houston at points in California, with exceptions in two instances where goods were delivered and services were performed by Houston in Denver, Colorado.

The facts also show that, regardless of the careful and guarded language used in the agreement to describe appellee's duties, he was actually a soliciting agent for Houston and, as such, endeavored at all times during the term of the agreement to get as much business as possible for his principal from Martin and others within his territory. He was successful in his efforts and secured a considerable amount of business from Martin. Under the purchase order arrangement, some 89 contracts or purchase orders were entered into that year involving many hundreds of thousands of dollars. Of this amount, over $400,000 worth of the equipment and services purchased by Martin from appellant was used in Colorado.

In addition, Teter assisted appellant in obtaining applicable bid specifications; he provided technical liaison between Martin and appellant, both prior to and after receipt of a purchase order; and he attempted to obtain more invitations to bid on behalf of appellant by interviewing personnel at Martin. In doing this work, Teter spent approximately four days a week interviewing and consulting with Martin personnel at the Denver plant. In addition to these activities by Teter on behalf of Houston, several of its officers, officials and technicians made various trips to Martin's Colorado plant in connection with legal and technical problems arising out of the purchase orders issued by Martin to it and out of the equipment furnished under such purchase orders. Some of these officers made as many as three trips to Colorado during 1960 and 1961, and several technicians made one trip each. At one time, in 1961, four of appellant's employees made a trip to Colorado to rework equipment and correct technical manuals. One other highly significant fact is that each of the purchase orders contained a provision that "This Contract shall be governed by, subject to, and construed according to the laws of the State of Colorado. The Contractor will comply with all applicable Federal, State and local laws."

We are unable to say on the basis of these facts that Houston's contacts with the territory of the forum were so minimal that the maintenance of this suit in that forum would offend "traditional notions of fair play and substantial justice." On the contrary, its activities in the state were "substantial", "continuous" and "regular" as distinguished from "casual", "single" or "isolated" acts and gave rise to the liabilities sued upon here.

■ In further support of its position that it was not "doing business" in Colorado, appellant points out that its corporate officer, upon whom service was made, was only in the state for a single day and that, after the termination of the agreement with Teter, it did not maintain an office, employee or representative in the state. This is true but it is hardly controlling here. "A foreign corporation which has ceased to do business in a state is still subject to service of process in suits on causes of action which arose out of business carried on by the defendant in the state." [6]

■ Appellant's last argument is that the lower court erred in denying its motion to transfer the action from the District of Colorado to the appropriate District in the State of California, pursuant to 28 U.S.C. § 1404(a).[7] We do not agree. The burden of establishing that the suit should be transferred is on the moving party[8] and unless the balance is strongly in favor of a defend-

---

6. Electrical Equipment Company v. Daniel Hamm, 8 Cir., 217 F.2d 656, 663, and authorities therein cited.

7. "For the convenience of parties and witnesses, in the interest of justice, a dis-

trict court may transfer any civil action to any other district or division where it might have been brought."

8. 1 Moore's Federal Practice, § 0.145 [5], p. 1777.

ant, the plaintiff's choice of forum should rarely be disturbed.[9] The exercise of this power is committed to the sound discretion of the trial court in the light of all the circumstances of the case and its judgment will be reversed only where the appellate court finds there has been an abuse of discretion.[10] We can find no such abuse of discretion in this case.

Affirmed.

9. Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Chicago, Rock Island & Pacific R. Co. v. Hugh Breeding, Inc., 10 Cir., 232 F.2d 584; Headrick v. Atchison, T. & S. F. Ry. Co., 10 Cir., 182 F.2d 305.

10. Chicago, Rock Island & Pacific R. Co. v. Hugh Breeding, Inc., 10 Cir., 247 F.2d 217, certiorari dismissed, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107; Chicago, Rock Island & Pacific R. Co. v. Hugh Breeding, Inc., 10 Cir., 232 F.2d 584.