WILSON HALONA, CECIL LARGO

WILLIS H. PETERSON, RAYMOND R. SMITH,

MARY WALLACE AND JIMMY WOODY

Plaintiffs-Appellees

vs.

PETER MACDONALD AND

ELDON HANSEN

Defendants-Appellants

Decided on January 24, 1978

Donald Benally, Shiprock, New Mexico, for Plaintiffs-Appellees Halona, Largo, Peterson, Smith and Woody

Richard Hughes, D.N.A., Window Rock, Arizona, and Wilbert Tsosie, D.N.A., Shiprock, New Mexico, for Plaintiff-Appellee Wallace

Michael Stuhff, Legal Department of the Navajo Nation, Window Rock, Arizona, for Defendants-Appellants

Before BLUEHOUSE, Acting Chief Justice and LINCOLN (retired Chief Justice sitting by special designation) and NESWOOD, Associate Justices

PER CURIAM

I.

This case comes on appeal from a decision of the Shiprock

District Court issued May 18, 1977, enjoining the defendants from expending any funds appropriated by the Navajo Tribal Council for the legal expenses of Peter MacDonald and declaring the appropriation illegal for failure to comply with certain tribal procedures and for being violative of certain substantive rights of the Plaintiffs.

On May 3, 1977, the plaintiffs filed a complaint in the Shiprock District Court asking for an injunction prohibiting the expenditure of $70,000 appropriated for Chairman MacDonald's private legal expenses by Resolution CAP-32-77, dated April 5, 1977. The complaint asked the Court to declare the action of the Tribal Council void for its failure to have the Budget and Finance Committee of the Navajo Tribal Council consider the matter prior to the Council's action pursuant to 2 N.T.C. 365. The complaint further asked the court to declare the Council's action unlawful because the resolution was not on the agenda approved by the Area Director of the Bureau of Indian Affairs.

The complaint also alleged that the expenditure authorized by the resolution was illegal under 25 U.S.C. 81 as no attorney contract was presented as required therein.

Also on May 3, 1977, the plaintiffs requested a temporary restraining order until the matter could be heard. The motion for the temporary restraining order requested that no security bond be required.

-190-

On May 3, 1977, the Shiprock District Court, the Honorable Charley John presiding, issued a temporary restraining order ex parte restraining the defendants from expending any of the $70,000 appropriated by Resolution CAP-32-77. No security bond was required by the Court.

On May 17, 1977, defendants moved the Court for an order changing venue to Window Rock on the grounds that the defendants were all residents of Window Rock, that the cause of action arose in Window Rock and on the grounds that Window Rock would be the most convenient forum for all parties.

At the same time, defendants moved to disqualify the Honorable Charley John on the grounds that he was related to one of the plaintiffs' attorneys.

Both motions were denied by the Court on May 17, 1977. A motion to dissolve the temporary restraining order was filed by the defendants on May 17, 1977.

On May 18, 1977, a hearing was held in the Shiprock District Court on the complaint and request for a permanent injunction.

An order was entered on May 25, 1977, issuing a permanent injunction prohibiting the expenditure of any funds appropriated under Council Resolution CAP-32-77 and declaring the Council's action illegal for failure to comply with 2 N.T.C. 365. The order and written opinion

subsequently issued declared that the matter was not a non-justiciable political question and that the action of the Council represented an illegal use of public funds for a private purpose.

The Court further found that there was no adequate remedy at law as there was little likelihood of the funds being recovered once they were spent.

Subsequently, on June 6, 1977, the defendants filed a motion to correct error and dissolve the injunction.

The motion to correct error was denied by the Shiprock District Court on June 6, 1977.

The defendants filed this appeal on June 19, 1977.

On August 2, 1977, Chief Justice Virgil Kirk, Sr., appointed retired judge Chester Yellowhair as Acting Chief Justice for this case and appointed retired Chief Justice Murray Lincoln and retired judge Tom B. Becenti as Associate Justices.

The plaintiffs immediately filed a motion to vacate the orders of August 2, 1977, stating as grounds therefor that the appointments violated Title 7, Section 203 of the Navajo Tribal Code which states that retired judges may only be called to relieve congestion in the docket of the Navajo courts.

On August 19, 1977, Chief Justice Kirk vacated his orders of August 2, 1977, and disqualified himself in favor of Homer Bluehouse, Acting Chief Justice by prior designation.

Oral Argument on this case was presented on October 19, 1977.

II.

The issues presented on appeal my be summarized as follows:

1. Whether venue as to Peter MacDonald and Eldon Hansen was properly found to lie in the Shiprock district.

2. Whether the District Court erred in not requiring a bond to be posted, pursuant to Rule 18 of the Navajo Rules of Civil Procedure.

3. Whether plaintiffs in this cause of action lacked standing to sue.

4. Whether the Navajo Tribal Council was an indispensable party to this suit.

5. Whether actions of the Navajo Tribal Council are reviewable by courts of the Navajo Nation.

6. If such actions are reviewable, what standards are to be used in reviewing the legislation in question here.

7. Whether the expenditure in question was in violation of 25 U.S.C. 81.

8. Whether the expenditure of Navajo Tribal funds in this instance was for a public or a private purpose and, if for a private purpose, whether Navajo law prohibits such an expenditure.

III.

We find that the Shiprock District Court did not err in determining that venue was proper in that district as to Peter MacDonald and Eldon Hansen.

Venue is both a tool of sound judicial administration and a mechanism to ensure a fair trial for the parties and a minimum burden on them and the courts.

Rule 26 (Venue) of the Navajo Rules of Civil Procedure says "an action shall be filed in the district in which any defendant resides or in which the cause of action arises..." [emphasis added]. The Shiprock District Court entertained the suit against Peter MacDonald on the grounds that he is registered as a voter in Teec Nos Pos, which is within the Shiprock district, and that this was sufficient indication of domicile to bring the suit within the proper scope of the rule. The

peculiar circumstances of Mr. MacDonald's status as the Navajo Nation's chief executive officer carried great weight with the District Court in making decision to rely on this technical indicator of domicile. This point is explained more fully below. Given the finding as to venue for MacDonald, venue as to Eldon Hansen was proper by operation of the rule. We agree fully with the District Court's analysis.

There is another consideration to this issue besides the purely technical analysis. That is the court's concern for fairness. It is a fact that, for all practical purposes, Appellant MacDonald lives in Window Rock, not Teec Nos Pos. But for Navajos, domicile is not as clear or fixed as it might be for non-Indians, if indeed the matter is really all that clear for our non-Indian brothers.

By custom, Navajos consider themselves to be from the same area their mothers are from. Thus, wherever they may be, they return home frequently for religious ceremonies and family functions, as well as to vote. By custom, Navajos are allow to register and vote in the area where they are from, rather than where they live. Even the Navajo Tribal Code's election law is silent on this point. Perhaps this custom may have to be breached in the future, but for the present, Navajos may be considered to be domiciled where they maintain their traditional and legal ties, regardless of where they actually live.

Given the resources available to the Chairman and the Controller to defend against this suit and the underlying tradition concerning residence, we agree with the District Court that it would

have been grossly unfair to have required plaintiffs below to file their action in the Window Rock District Court. This is not to say that we sanction in our opinion here "nationwide" venue as to suits against tribal officials. We do not. We here rule only that the circumstances of this particular suit justified a finding of venue in the Shiprock district by the District Judge there.

Assuming, however, that venue in the Shiprock District Court was improper, that error alone would still not warrant a reversal of the District Court's decision.

It is a well settled principle of law that absent a strong showing a bias to the defendant, venue errors are treated as harmless. See Chicago, Rock Island and Pacific R. Co. v. Hugh Breeding, Inc., 232 F.2d 584 (10th Cir., 1956), cert. den. 355 U.S. 880 (1957).

IV.

The issue of fairness arises again in the question of whether it was error not to require Plaintiffs to post security, pursuant to Rule 18. On its face, that rule seems absolute. It says, at the applicable part:

> No restraining order or injunction shall issue except upon the giving of security by applicant, in such sum as the court deems proper for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

However, a close reading of the rule indicated the purpose of security: to compensate for damages likely to be sustained. It is entirely within the discretion of the court to determine whether <u>any</u> security at all is needed and , if so, what the sum should be.

Appellants have made no real case for the injury supposedly sustained by them. Instead, they have relied on a technical but erroneous interpretation of the rule in the hopes of erecting an insurmountable barrier to the suit. We reject this argument.

V.

Appellants have insisted that none of the Appellees had standing to bring this cause before the District Court. The point is made that the Appellees suffered no personal injury as a result of the Council's action and the expenditures made thereafter.

The Appellees divide into two categories, the first being composed of the constituents Mary J. Wallace and Cecil Largo and the second being composed of four members of the Council itself. Ordinarily, private citizens lack standing to litigate the validity of expenditures from the public treasury.

But this is not an absolute rule. As the Supreme Court stated in <u>Flast v. Cohen</u>, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947:

> When the emphasis in the standing problem is placed on whether the person invoking a federal court's jurisdiction is a proper party to

maintain the action, the weakness of the Government's argument in this case becomes apparent. The question whether a particular person is a proper party to maintain the action does not, by its own force, raise separation of powers problems related to improper judicial interference in areas committed to other branches of the Federal Government. Such problem arise, if at all, only from the sub-stantive issues the individual seeks to have adjudicated. Thus in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. It is for that reason that the emphasis in standing problems is on whether the party invoking federal court jurisdiction has "a personal stake in the outcome of the controversy," Baker v. Carr, 7 L.Ed.2d at 678, and whether the dispute touches upon "the legal relations of parties having adverse legal interests." Aetna Life Insurance Co. v. Haworth, 81 L.Ed. at 621, 108 ALR 100. A taxpayer may or may not have the requiste personal stake in the outcome, depending upon the circumstances of the particular case.

It is not sound practice to open the court's doors to suits by every citizen having a disagreement with policy decisions of the legislative body. Courts are not a second political arena for losing combatants to stage a re-match. However, there are occasions when a private citizen's interests rise above the policy decision represented by the expenditure and reach the level of civil rights which the legislative body is no less charged with protecting than the courts.

These kinds of rights are those which the United States Supreme Court was speaking of in Flast v. Cohen, supra.

We are in agreement with that Court's thinking on this point.

-198-

The question is: what fundamental rights of Cecil Largo and Mary Wallace are at issue here?

The answer does not lie in a non-Indian analysis. This expenditure raises a question peculiar to Navajo tradition and law (albeit similar to other American Indian concepts of property). Because this issue is discussed at length in Navajo later in our decision, it is sufficient here to say that we find that on the facts of this case we can agree with the District Court that these two plaintiffs had standing to sue.

As to Wilson Halona, Raymond R. Smith, Willis H. Peterson, and Jimmy Woody, the question of standing is different. They are all members of the Navajo Tribal Council. This petition they presented to the Shiprock District Court raised questions which would not very often be raised in any other government of significance in the United States.

The first question is what law, if any, governs the conduct of Navajo Tribal Council proceedings. The second question is how conflicts among various pieces of legislation are to be resolved. And the third question is who is to review actions of the Council and what standards of review are to be used.

If members of the Council do not have standing to raise these questions, then who does? We cannot imagine under what principles a member of the legislative body would lack standing to bring before the court such momentous issues.

Their interest in having these questions answered by the courts--even if resolved adversely--is clear:

> the questions are really questions about the meaning of "due process" in its most elemental state and the absence or presence of proper procedure in legislative proceedings can materially alter the outcome of any given proceeding.

The question of standing cannot be allowed to deflect our courts from examining the merits of the case when the connection between the plaintiffs and the cause of action is not inconsequential. The connection here is not tenuous nor are the plaintiffs seeking to litigate matters which really do not affect any of their legitimate interests.

Otherwise, "lack of standing to sue" becomes a convenient but abused execuse for courts to avoid dealing with politically sentitive cases. We have no need of such an excuse here.

VI.

The claim that the Navajo Tribal Council is an indispensable party to this suit misses the point of such an argument. Parties are indispensable, according to Black's Law Dictionary, as well as American Jurisprudence 2d, and other scholarly works, when:

> (they have) an interest of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

The objection to the absence of an indispensable party is one best analyzed in light of the underlying policy considerations which give rise to the label in the first place.

The term is not a magic phrase which, when inserted into a defendant's answer, automatically strips a court of its right to hear the case. If an examination of the facts of the case reveals that a party truly must be represented in a given case to do justice, then the court should not proceed without that party. If the party may be joined, then joinder is the proper course for the court. If the party cannot be joined, then the suit must be dismissed.

In Shields v. Barrow, 58 U.S. 130, 15 L.Ed.158, the United States Supreme Court said (quoting itself in Mallow v. Hinde, 12 Wh. 198) that "no court can adjudicate directly upon a person's right without the party being either actually or constructively before the court."

The key word is "constructively". As we understand this term and the general trend of the law concerning indispensable parties, it is possible that the interests of such a party may be in certain cases adequately and fairly represented by another litigant, thus in effect putting the indispensable party before the court for all the purposes which the doctrine seems to effectuate.

Here, the Legal Deprtment of the Navajo Nation represented the Chairman of the Tribal Council, the Controller, and the Council as a whole. The Chairman, as the chief executive officer of the Navajo

Nation and as head of the Council, is charged with seeing to it that the Legal Department (and the Office of the General Counsel, to which the Legal Department is subordinate) represents the interests of the Council.

We do not believe that the Legal Department has been remiss in its duties. Almost all of the arguments propounded by the attorney for Appellants have actually been arguments on behalf of the Council rather than for either Appellant personally.

This entire matter really arises because of a legal fiction. Sovereign immunity protects the Navajo Nation and its governing body, the Council, from suit. However, this doctrine does not protect wrongdoing. Rather, it preserves the dignity of the sovereign. Thus suits are brought against ministers and employees of the sovereign.

For example, the United States cannot be sued without their consent and, therefore, the Congress as such may not be sued. However, many legislative acts are called into question through the mechanism of suits against individuals. Cabinet secretaries are frequently sued in the course of implementing legislation objected to by certain affected individuals or groups. See Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636; Califano v. Jobst, ____ U.S. ___, 98 S.Ct. ___, 54 L.Ed.2d 228.

Of course, legislation is frequently the issue in appeals from criminal prosecutions by U.S. attorneys. See Scarborough v. U.S.

___, 97 S.Ct. ___, 52 L.Ed.2d 582 and Jeffers v. U.S., ___ U.S. 97 S.Ct. ___, 53 L.Ed.2d 168.

The Speaker of the House of Respresentatives has been sued by a member of the House in litigation whose central issue was the question of the power of the House itself. The Supreme Court did not hold the House to be an indispensable party to that suit. Indeed, the question was not even raised. Powell v. McCormack, 395 U.S. 486, 23 L.Ed.2d 491, 89 S.Ct. 1944.

What is operative in all of these examples is the fact that important questions about legislation are presented to courts without the sovereign being joined as an indispensable party. Of course, doing this would then raise the protection of immunity and result in the dismissal of the suit if Appellant's logic prevailed. This court will not be trapped by such sophistry and thereby surrender its right and neglect its duty to protect the rights of our people.

We agree once again with the District Court that the legitimate interests of the Navajo Tribal Council were properly before the court and adequately and fairly represented by counsel without the Council's having been joined as an "indispensable party".

VII.

The right and power of the Navajo courts to authoritatively review actions of the Navajo Tribal Council has been called into ques-

tion before, not only in our courts, cf Dennison v. Tucson Gas and Electric (1947), but also in federal courts. See Arizona Public Service v. The Navajo Tribe, (Arizona District, 1977) and Arizona Public Service v. The Navajo Tribe, (New Mexico District, 1977).

There is no question in our minds about the existence of such authority. When the Navajo Tribal Council adopted Title 7, Section 133 of the Tribal Code, it did not exclude review of Council actions from its broad grant of power to the courts.

Indeed, in our opinion, Title 25, Section 1302 of the United States Code precludes such an exclusion of judicial review of legislative actions because that law is a mandate for Indian governments which necessarily assumes and requires judicial review of any allegedly illegal action by a tribal government.

In particular, 25 U.S.C. 1302 (8) prohibits the denial of equal protection of the laws and deprivation of liberty or property without due process of law. We cannot imagine how any legislative body accused of violating these primary rights could be the judge of its own actions and at the same time comply with the federal law. Of course, this is not possible.

Judicial review must, therefore, necessarily follow. If the courts established by Indian tribes cannot exercise this power, then the only alternative is review in every case by federal courts.

It is inconceivable to us that the Navajo Tribal Council would prefer review of its actions by far-away federal courts unfamiliar with Navajo customs and laws to review by Navajo courts. We know that this is not the case because the Council has not limited the power of Navajo courts in this respect and his never indicated a willingness to do so.

The courts of the Navajo Nation, including this Court, have frequently reviewed and interpreted legislation passed by the Council and executive actions of the Chairman of the Council. See Dennison v. Tucson Gas and Electric, (Navajo Court of Appeals, December 23, 1974).

Our right to pass upon the legality or meaning of these actions has been questioned in certain places but never by the Council or its Chairman. That is because they have a traditional and abiding respect for the impartial adjudicatory process. When all have been heard and the decision is made, it is respected. This has been the Navajo way since before the time of the present judicial system. The Navajo People did not learn this principle from the white man. They have carried it with them through history.

The style and the form of problem-solving and dispensing justice has changed over the years but not the principle. Those appointed by the People to resolve their disputes were and are un-questioned in their power to do so. Whereas once the clan was the primary forum (and still is a powerful and respected instrument of

justice), now the People through their Council have delegated the ultimate responsibility for this to their courts. That is why 7 N.T.C. 133 is so broadly written.

In any case, judicial review by tribal courts of Council resolutions is mandated by the Indian Civil Rights Act, 25 U.S.C. 1302.

We therefore uphold the Shiprock District Court's determination on this point.

VIII.

In analyzing the propriety of Council Resolution CAP-32-77, we must look first to the existing applicable law and then we must determine what effect is to be given to Resolution CAP-32-77, given that it is inconsistent with the codified law.

Appellants urge upon this Court the proposition that the latest legislation automically repeals all prior inconsistent acts, or presumably at least supersedes it in some indeterminate piecemeal manner. At first glance, this seems logical enough and has the appeal of judicial economy and finality. We take judicial notice that certain legislation passed subsequent to CAP-32-77 specifically noted that it repealed all prior inconsistent legislation. See CO-65-77, (Fiscal Year 1978 appropriation legislation).

However, this view is really no help in analyzing the effect

of CAP-32-77, because that legislation did not include an express repealer clause nor was it passed in a manner that indicated a clear intent on the part of the Council as to its effect on existing legislation.

Council Resolution CF-18-77, adopted by the Council February 28, 1977, sets forth the duties and powers of the Budget and Finance Committee of the Navajo Tribal Council. Among the procedures set forth in that statute for the control of the budgetary process of the Navajo Nation's government is the requirement that requests for interim budget revisions be submitted to the Committee for its approval or disapproval prior to their submission to the full Council, if submission to the Council is required at all.

Section 10 of the statute (which section clearly was intended to take effect immediately, as opposed to section 9) makes no exeception for any kind of interim budget revisions. It was not argued by counsel for Appellants that the appropriation at issue here was anything but an interim budget revision, not could it have been anything else since the budget for Fiscal Year 1977 had long before been approved and implemented when this emergency appropriation was requested.

In fact, before approving the appropriation, the Navajo Area Director of the Bureau of Indian Affairs specifically requested the Chairman to identify the source of the funds for this special expenditure. The Chairman did so, apparently without consultation either with the Budget and Finance Committee or the Council.

Therefore, it is clear that the Council intended to and did establish a budget procedure that requires the Budget and Finance Committee's approval of interim budget changes such as the one re-presented by CAP-32-77 before such changes are voted on by the full Council.

We cannot understand how any court could assume without clear legislative direction that the legislature intended to override in a particular, hastily-drawn and approved resolution the fiscal and legis-lative system that they had so carefully considered and approved only two months before. If any later minor legislation not passed in accordance with the procedures established by the Council itself can automatically override such procedures, one would rightfully wonder what the point of having procedures would be. What the courts would be left with is chaos. No one could ever be sure whether the pro-cedures established by the Council really had to be complied with. Due process of law would be a joke, available when useful to certain people, something to be ignored when not so useful.

We do not intend to be the ones to tell the Navajo Tribal Council that it was "going through the motions" of approving mean-ingless legislation when it passed CF-18-77 and that this Court can give no substance to that resolution. In the absence of a clear intent on the part of the Council to repudiate or suspend that act and in the absence of clearly-defined Council procedures, we must rule that CAP-32-77 is the invalid legislation because it was passed in a manner inconsistent with the substantive legislation of CF-18-77.

-208-

We are reminded at this point that the Navajo Nation possesses no constitution. It is for this reason that the Navajo courts must be so careful to preserve the concepts of due process of law embodied in the Indian Civil Rights Act. Analyzing legislation so as to guarantee that the process by which the legislature gives us the laws which we must interpret and enforce is consistent and fair to all is absolutely essential to the preservation of Navajo sovereignty and to the avoidance of actions which might otherwise be in violation of federal law.

Had CAP-32-77 expressly repealed all prior inconsistent resolutions (as did CO-65-77) or at least had it expressly suspended CF-18-77, then we would have no problem upholding CAP-32-77. But unfortunately, the drafters of that act were hasty and consequently deficient in their work. As a result, we must rule that CAP-32-77 is invalid.

IX.

This Court, after reading the briefs, on its own raised the question of the relationship between this expenditure and 25 U.S.C. 81. Counsel for both appellants and appellees were questioned on this matter.

This Court has long been aware that the Department of Interior has interpreted this statute to mean that any and all attorneys receiving tribal monies for services rendered to a tribe or officers and organizations of the tribe acting in their tribal capacities must first

have a contract approved by the appropriate tribal governing body and by the Department of Interior.

We cannot understand this long-standing interpretation at all. 25 U.S.C. 81 is clearly intended to cover only those attorneys providing claims services. "Claims attorney" is a term of art. The services such as those which F. Lee Bailey provided to the Navajo Nation on behalf of Peter MacDonald are clearly not covered by 25 U.S.C. 81.

We note that this was the position taken by the Field Solicitor for the Navajo Area in an unlightening memorandum from him to the Area Director, who had raised the same question we now raise. However, the matter concerns us because we are charged with applying federal law when it may be applicable. See 7 N.T.C. 104 (a). We would have had no doubts that 25 U.S.C. 81 was inapplicable except for its common application to all attorneys receiving tribal monies for legal services to the tribe.

It cannot seriously be argued by appellants that Mr. Bailey rendered no service to the Navajo Nation because the very resolution authorizing the payment of money to him required him to submit invoices to the Controller of the Navajo Nation is order to receive payment. In addition, Mr. Stuhff, counsel for Appellants, argued that the expenditure served a public purpose in that the Council was providing legal services for Mr. MacDonald only in his capacity as Chairman of the Navajo Tribal Council. We take him at his word insofar as the

internal consistency of Appellants' argument goes.

We therefore rule that the appropriation was not in violation of 25 U.S.C. 81 and add that we expect consistency in the application of this statute from the Department of Interior. We do not expect that any tribal attorneys rendering non-claims services to the Navajo Nation will be asked to comply with this statute in view of the interpretation (such as it was) rendered in Mr. Bailey's case.

X.

The final issue is whether the expenditure was for a public or a private purpose and, if for a private purpose, whether Navajo law prohibits such an expenditure.

This question can only be answered by reference to Navajo tradition and by an analysis of Navajo history, especially as that history related to the land which produces all Navajo income. The Navajo People are supreme and all residual power lies with the People. In the end, all monies spent by the Navajo Tribal Council are monies of the Navajo People.

Because we cannot adequately explain our ruling on this point in English, we have chosen to announce this part of our decision from the bench in Navajo. This part of our opinion will then be transcribed into Navajo at the earliest possible date and issued as a supplemental part of this decision.

-211-

For the reasons we have already stated above in English, the decision of the Shiprock District Court of the Navajo Nation is hereby AFFIRMED.